AGE INTERNATIONAL, INC.; Austin, Nichols & Co., Incorporated; Bacardi Imports Inc.; The Black Prince Distillery, Inc.; Brown–Forman Corporation; Carillon Importers Ltd.; Charles Jacquin Et Cie., Inc.; David Sherman Corporation; E. & J. Gallo Winery; The Fleischmann Distilling Company, a Division of Fourth Colchester, Inc.; Fourth Colchester, Inc.; Heaven Hill Distilleries, Inc.; Heublein, Inc.; Hiram Walker & Sons, Inc.; Jim Beam Brands Co.; Joseph E. Seagram & Sons, Inc.; The Paddington Corporation; Remy Amerique, Inc.; Sazerac Company, Inc.; Schieffelin & Somerset Co.; Sidney Frank Importing Company, Inc.; Southern Wine & Spirits of America, Inc., d/b/a Shaw Ross International Importers; William Grant & Sons, Inc.

v.

Zell MILLER, Individually and as Governor of the State of Georgia; Marcus E. Collins, individually and as Georgia State Revenue Commissioner; and Claude L. Vickers, individually and as Deputy Commissioner of the Administration Division of the Department of Administrative Services and as Director of the Fiscal Division of the Department of Administrative Services and as State Treasurer for the State of Georgia.

Civ. No. 1:92–cv–1662–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 25, 1993.

Celeste McCollough, John L. Taylor, Jr., Vincent Chorey Taylor & Feil, Atlanta, GA, for plaintiffs.

David A. Runnion, Office of State Atty. Gen., Bruce McCord Edenfield, Hicks Maloof & Campbell, Atlanta, GA, for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This civil action challenging Georgia's alcohol tax statutes is before the court on its own motion for a determination of subject-matter jurisdiction. The issue is whether the court lacks jurisdiction to grant injunctive and declaratory relief by virtue of the Tax Injunction Act, 28 U.S.C. § 1341, which provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

Defendants urge that there are a number of "plain, speedy and efficient remed[ies]" available in the courts of Georgia, and that therefore this court has no jurisdiction to grant the relief requested by Plaintiffs.

An evidentiary hearing was held on July 8–9, 1993.[1] After considering the evidence and the arguments of counsel, the court makes the following findings of fact and conclusions of law.

Plaintiffs are numerous distillers and manufacturers of alcoholic beverages which are manufactured and bottled outside the state of Georgia. As importers of alcoholic beverages, Plaintiffs are subject to the taxation scheme contained in O.C.G.A. § 3–4–60, which taxes imported alcoholic beverages at twice the rate as alcoholic beverages manufactured within the state of Georgia. In this action, Plaintiffs seek a declaration that § 3–4–60 is unconstitutional under the Commerce Clause and other provisions of the United States Constitution. They also seek an injunction to prevent future collection of the double tax.

Defendants are Zell Miller, the Governor of Georgia; Marcus E. Collins, the Georgia State Revenue Commissioner; and Claude L. Vickers, who holds three titles: Deputy Commissioner of the Administration Division of the Department of Administrative Services, Director of the Fiscal Division of the Department of Administrative Services, and State Treasurer for the State of Georgia.

## I. FACTUAL AND LEGAL BACKGROUND

### A. The History of Alcohol Taxation in Georgia

The Twenty–First Amendment to the United States was proposed and ratified in 1933. That amendment repealed the Prohibition Amendment, and granted each state certain authority over the importation of "intoxicating liquors" into the state. U.S. Const. amend. XXI, §§ 1, 2. The extent of a state's authority to regulate and tax the importation of alcoholic beverages has remained disputed since the ratification of the amendment; however, it is now clear that the amendment did not effect a *pro tanto* repeal of the Commerce Clause, and that the concerns of other constitutional provisions must be weighed against the concerns of the Twenty–First Amendment. *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 275, 104 S.Ct. 3049, 3057, 82 L.Ed.2d 200 (1984); *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 331–32, 84 S.Ct. 1293, 1297–98, 12 L.Ed.2d 350 (1964).

In response to the ratification of the Twenty–First Amendment, the state of Georgia enacted regulatory laws and a taxation scheme relating to the importation and sale of alcoholic beverages. The taxation system imposed a higher tax on alcoholic beverages

---

1. In *Colonial Pipeline Co. v. Collins,* 921 F.2d 1237 (11th Cir.1991), the Court of Appeals held that the district court erred in deciding the jurisdictional question under the Tax Injunction Act without permitting an evidentiary hearing on the adequacy of state remedies. In order to circum-vent the same problem in this case, the court *sua sponte* set down a hearing date and notified the parties that they could present whatever evidence they believed to be appropriate on the issue of jurisdiction.

imported into the state than on beverages manufactured within the state. *See* Ga.L. 1937–38, Ex.Sess., p. 103, §§ 11, 12 (later codified as O.C.G.A. § 3–4–60). In fact, the tax on imported beverages was exactly twice the tax on beverages manufactured within the state.

The regulatory system currently in place in Georgia is based on a "three-tier" structure. Under this structure, manufacturers (such as Plaintiffs) distill or brew and then package alcoholic beverages. The manufacturer (whether within or outside Georgia) ships the packaged beverage to an in-state wholesaler. That wholesaler then distributes the beverages to retail dealers who sell the beverages directly to consumers, either in unbroken packages or for consumption on the premises. *See generally,* O.C.G.A. § 3–1–2. The state maintains strict segregation between the different tiers; in most cases, a single company may not be both a manufacturer and a wholesaler. (*See* Affidavit of Herman Oliver, Plaintiffs' Exh. BBB ¶ 4; *see also* Transcript at 85).

During the 1937–38 extra legislative session, the Georgia legislature also enacted a general refund statute. *See* 1937–38 Ga.L., Ex.Sess., p. 77, §§ 34 (later codified as O.C.G.A. § 48–2–35). The refund statute provided (and still provides) as follows:

> (a) A taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from him under the laws of this state, whether paid voluntarily or involuntarily, and shall be refunded interest. . . .

The procedure requires that the taxpayer file a claim with the Revenue Commissioner within three years of payment of the taxes. O.C.G.A. § 48–2–35(b). If the Commissioner denies the claim, or fails to render a decision within a year, the taxpayer may file an action for a refund in the superior court of the taxpayer's county of residence. O.C.G.A. § 48–2–35(b)(4). However, as explained in more detail below, this refund statute was amended in 1992 to make it inapplicable to alcoholic beverage taxes. *See* 1992 Ga.L., p. 1458, § 4 (now codified as O.C.G.A. § 48–2–35(d) (1993 supp.)).

### B. *The Impact of Bacchus*

In 1984, the United States Supreme Court issued its decision in *Bacchus Imports, Inc. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). In that case, the Court struck down Hawaii's alcohol taxation statute on Commerce Clause grounds. Although not a radical departure from prior law, *Bacchus* made clear that pure economic protectionism is not a valid state purpose entitled to deference under the Twenty–First Amendment. *Id.* at 276, 104 S.Ct. at 3057. The Hawaii statute held unconstitutional was similar to the Georgia statute enacted in 1938.

In 1985, the Georgia General Assembly engaged in some legislative acrobatics to retain the essential structure of the taxation system, yet insulate it from the Commerce Clause jurisprudence crystallized in *Bacchus.* On March 31, 1985, the Assembly approved an act which equalized the excise tax on imported and domestic alcoholic beverages. However, the equalized tax had no time to become effective, because the next day the Assembly passed another act, the current version of O.C.G.A. § 3–4–60. This statute reimposed the differential tax on imported alcoholic beverages, although it is phrased slightly differently from the pre–1985 statute:

> The following taxes are levied and imposed:
>
> (1) There shall be imposed upon the first sale, use, or final delivery within this state of all distilled spirits an excise tax in the amount of 50¢ per liter and, upon the first sale, use, or final delivery within this state of all alcohol, an excise tax in the amount of 70¢ per liter, and a proportionate tax at the same rate on all fractional parts of a liter;
>
> (2) There shall be imposed upon the importation for use, consumption, or final delivery into this state of all distilled spirits an import tax in the amount of 50¢ per liter and, upon the importation for use, consumption, or final delivery within this state of all alcohol, an import tax in the amount of 70¢ per liter, and a proportionate tax at the same rate on all fractional parts of a liter; and

(3) All alcohol spirits manufactured within this state for sale within this state shall be made from Georgia grown products.

O.C.G.A. § 3–4–60. The April 1, 1985 Act contained a non-severability clause which provided that the March 31, 1985 version would be reinstated should the later version ever be held invalid or unconstitutional. The bill enacted on April 1, 1985, also contained a new preamble.[2]

In addition to the general refund procedure, alcoholic beverage taxpayers could seek a refund or credit under a more specific procedure contained in the alcoholic beverage code. This procedure, codified as O.C.G.A. § 3–2–13, was enacted in 1980. It provided that the commissioner "may issue refunds or credits for taxes" paid by wholesalers or manufacturers, in certain circumstances. Refunds and credits were authorized primarily in cases where the stamps or the stamped goods were lost, damaged, destroyed, or not actually shipped into Georgia.

### C. The "Heublein I" Case

Shortly after the 1985 statute was enacted, Heublein, Inc. (a Plaintiff in the instant case) filed a complaint challenging its constitutionality. (*See* Plaintiffs' Exh. M). That complaint, seeking injunctive and declaratory relief, was filed in the Superior Court of Fulton County on April 29, 1985.

Immediately after the *Heublein I* complaint was filed, Heublein moved for a preliminary injunction to prevent the state from collecting the allegedly unconstitutional double tax. (Plaintiffs' Exh. T). The state responded by arguing that Heublein was unlikely to succeed on the merits of the challenge, and that an injunction would create a great burden on the Department of Revenue and on the state.[3] (Plaintiffs' Exh. U).

Judge Williams of the Fulton Superior Court denied the motion for preliminary injunction. (Plaintiffs' Exh. W).

In further proceedings, the Fulton Superior Court rejected Heublein's constitutional challenge to the 1985 differential tax statute, despite its similarity to the pre–1985 tax statute, and to the pre-*Bacchus* Hawaii statute. The Georgia Supreme Court affirmed. *Heublein, Inc. v. State*, 256 Ga. 578, 351 S.E.2d 190, *appeal dismissed for lack of properly presented federal question*, 483 U.S. 1013, 107 S.Ct. 3253, 97 L.Ed.2d 753 (1987). The Georgia Supreme Court concluded that the purpose of the current version, as stated in the preamble, sufficiently implicated Twenty–First Amendment principles so as to outweigh concerns under the Commerce Clause or the Equal Protection Clause. *Id.*, 256 Ga. at 584–85, 351 S.E.2d 190.

### D. The "Beam" Case

After the Georgia Supreme Court had issued its opinion in *Heublein I*, James B. Beam Distilling Co. (a Plaintiff in the instant case) filed a complaint seeking a refund for taxes paid under the *pre*–1985 statute. (Plaintiffs' Exh. N). That complaint was filed on or about April 24, 1987, in the Superior Court of Fulton County. Beam sought a refund pursuant to the general refund statute, O.C.G.A. § 48–2–35. Beam had filed a request for a refund on April 25, 1985, with the Georgia Department of Revenue, and the Commissioner had not ruled on the application within a year of the filing.[4] (*See* Plaintiffs' Exh. Y ¶¶ 14–18).

The pre–1985 double taxation statute was ultimately held unconstitutional by Fulton Superior Court. (Plaintiffs' Exh. Y). Under the rationale of *Bacchus*, the Georgia Supreme Court affirmed. *James B. Beam Dis-*

---

**2.** The new preamble (not codified) states:

> The General Assembly finds and determines that the *cost of regulating and administering the manufacture, distribution, and sale* of alcohol, distilled spirits, table wines, and dessert wines consumed in this state is greater for imported alcohol, distilled spirits, table wines, and dessert wines than it is for alcohol, distilled spirits, table wines, and dessert wines produced within this state and further finds and determines that it is in the best interest of the

citizens of this state that the increased costs be provided for by taxation.
1985 Ga.L., p. 665, § 1 (emphasis added).

**3.** "The result of an injunction would quite simply be regulatory chaos." Plaintiffs' Exh. U at 18.

**4.** In fact, it appears that the Commissioner had not ruled on the claim as of the date the complaint was filed, nearly *two* years after the initial claim was filed.

*tilling Co. v. State of Georgia,* 259 Ga. 363, 382 S.E.2d 95 (1989), *rev'd on other grounds,* 501 U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).[5] The *Beam* case has been remanded to the Superior Court for resolution of remedial issues. (*See* Plaintiffs' Exhibit X).

### E. *The 1992 Legislation*

In the spring of 1992, a bill was introduced in the Georgia House of Representatives to equalize the tax on alcoholic beverages manufactured inside and outside the state. The bill passed the House by a wide margin. (Plaintiffs Exh. K ¶ 5). However, the bill was held up by a Senate committee, and was never brought up to a vote before the full Senate. (*Id.* ¶ 9–12).

Instead of equalizing the alcohol tax, the legislature rewrote the credit/refund procedures for alcoholic taxpayers. In the 1992 version of O.C.G.A. § 3–2–13, the following subsection was added:

(a) Notwithstanding any other provision of this title or any other title to the contrary, the provisions of this article shall provide the exclusive remedy and procedure for seeking and obtaining any and all refunds or credits for taxes paid on alcoholic beverages and for stamps purchased in payment of taxes on alcoholic beverages. No refund in the form of a disbursement shall be allowed for any such taxes or payments. No credit shall be allowed for any such taxes or payments unless expressly authorized by this article.

Section (b) of the 1992 version listed the same reasons for granting a credit as the prior version, with the addition of the following possible ground for a credit:

(b)(6) Taxes were paid or stamps were purchased under a statute expressly held to be unconstitutional by a court of last resort and the ground of the protest was the same as the basis for the ruling of unconstitutionality by the court of last resort.

Finally, the 1992 version of O.C.G.A. § 3–2–13 sought to eliminate refunds or credits where taxes had been passed on to a subsequent purchaser:

No person shall receive a credit for taxes paid or stamps purchased in any case where an amount equal to the amount of taxes paid or to the cost of the stamps purchased has been charged to or paid by any purchaser of the person seeking a refund or credit. When an applicant is issued a credit for taxes paid or stamps purchased, in every case where an amount equal to the amount of taxes paid or cost of the stamps purchased has been charged to or paid by any purchaser of the applicant, the applicant shall refund or credit to the purchaser or customer an amount equal to the credit allowed by the commissioner.

1992 Ga.L., p. 1458 § 1(c).

The 1992 Act accomplished other tasks, as well. *See,* 1992 Ga.L., p. 1458 §§ 2–4. Section 2 of the Act altered the procedure for obtaining a credit from the Revenue Department, decreasing the limitations period from three years to 90 days. Section 2 also precluded any interest from being paid on a credit, and provided that an action for a credit may not be filed in superior court until a year after the claim is filed or until the Commissioner rules upon the claim, whichever comes first. Section 3 of the 1992 Act changed the manner in which alcohol taxes are to be paid; effective February 1, 1993, tax stamps are no longer used, and taxes are based on the "reporting system" under which the wholesalers keep detailed records and pay the taxes. Finally, Section 4 added a subsection to the general tax refund statute, which specified that it no longer applied to alcoholic beverage taxes.

The complaint in this case was filed on July 9, 1992. In October, 1992, the Georgia Supreme Court decided the case of *Reich v. Collins,* 262 Ga. 625, 422 S.E.2d 846 (1992). In *Reich,* the Court held that the general refund statute, O.C.G.A. § 48–2–35, is only applicable to a claim for an improper collection of tax under a valid tax law; it does not

---

**5.** The transcript of the oral argument before the United States Supreme Court has been admitted as Plaintiffs' Exh. J.

address the situation where the tax statute under which the taxes are assessed is later held to be unconstitutional. *Id.,* 262 Ga. at 628–29, 422 S.E.2d 846. The Court also stated: ·

> We take this opportunity to hold that in cases in which a taxing statute is declared unconstitutional or otherwise void, a taxpayer must have made a demand for a refund at the time the tax is paid or at the time his tax return is filed, whichever occurs last. Failure to do so bars any future claim.

*Id.,* 262 Ga. at 629, 422 S.E.2d 846. However-er, *Reich* has recently been vacated and remanded for further consideration in light of *Harper v. Virginia Dept. of Taxation,* —— U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (holding that a rule announced by the Supreme Court in a civil case must be applied to all cases still open on direct review, if the Court applied the rule to the parties before it; furthermore, states must provide adequate remedy that comports with due process). *Reich v. Collins,* —— U.S. ——, 113 S.Ct. 3028, 125 L.Ed.2d 717 (1993).

### F. *The Events of 1993*

On January 7, 1993, this court entered its prior order, preliminarily denying Defendants' motion to dismiss on numerous jurisdictional and abstention grounds. At that time, the court could not conclusively determine whether or not Plaintiffs had a "plain, speedy and efficient" remedy in state courts. One of the court's concerns was the new subsection of O.C.G.A. § 3–2–13, which stated that the credit procedure was the *exclusive* remedy for alcoholic beverage taxpayers; the court believed that a Georgia court might feel compelled to dismiss an action in equity in light of this specific, and assertedly exclusive, statutory scheme. The court also expressed concern (in a footnote) that even if Plaintiffs were successful in obtaining a credit for previously-paid unconstitutional taxes, such credit would be worthless because after February 1, 1993, taxes were to be paid solely by wholesalers rather than manufacturers.

The Georgia General Assembly amended the statutory tax scheme in early 1993. The 1993 Act deleted O.C.G.A. § 3–2–13(a), the subsection added in 1992 which contained the exclusivity language (quoted *supra*). The 1993 Act also added a new subsection, which states as follows:

> (c) In the event that the commissioner issues a credit under this Code section to a person who has or will have insufficient tax liabilities to the State of Georgia against which to offset the credit, the commissioner shall issue a refund to such person for the unusable portion of the credit.

O.C.G.A. § 3–2–13(c). Defendants argue that these amendments leave no doubt that there are several "plain, speedy and efficient" remedies at state law.

### G. *Other Challenges to the Taxation System*

· The court has previously discussed the *Heublein I* and *Beam* cases, which have been pursued by two of the Plaintiffs in this action. In addition, two other cases involving the pre–1985 statute were filed in the Superior Court of DeKalb County in 1987. (Plaintiffs' Exh. O, P). Those two cases have been informally stayed pending the outcome of the *Beam* case. The plaintiffs in those cases are the Seagram and Heublein Plaintiffs in this case.

The final complaint involving the alcohol taxation statutes was filed a day after the complaint in the instant case. *Age International, Inc., et al., v. State of Georgia, et al.,* Fulton County Superior Court, Civil No. E–3793. The "state *Age* case" seeks a refund or credit for taxes paid during the three years prior to the effective date of the 1992 Act.

### H. *The Issue of Payment Under Duress*

At the evidentiary hearing on the jurisdictional issues, a surprising amount of time was devoted to the question of whether Plaintiffs were actually required to pay taxes, in the form of tax stamps under the old stamp system, or whether they were simply tax "volunteers." Defendants' witnesses implied that Plaintiffs, as producers, could ship unstamped bottles into the state, as long as wholesalers purchased the appropriate stamps. (*See,* Transcript at 68, 72–74, 81, 87,

92–93, etc.). Herman Oliver, a Revenue official, repeatedly referred to O.C.G.A. § 3–4–61(2) as authority for his assertion that the tax stamps system was a "dual-liability" system. According to Mr. Oliver, it was not a violation to ship unstamped bottles into the state to wholesalers; a violation would only occur if a wholesaler attempted to ship unstamped bottles to the retail market. (Transcript at 113–16).

By contrast, Plaintiffs' witnesses (industry representatives) testified credibly that they were given the impression, both by revenue regulations and by revenue officials, that severe penalties would befall any producer who intentionally shipped unstamped bottles into the state. (Transcript at 157–61). Plaintiffs' witnesses testified that wholesalers did occasionally purchase tax stamps, but that the reasons for this was almost always that the producer had inadvertently shipped a few cases of unstamped bottles. (Transcript at 147–49, 192–93).

The parties did not explicitly state what they were trying to prove with this testimony. Apparently, Defendants are seeking to make a record that Plaintiffs were not "required" to purchase stamps prior to shipment, and thus that there was no payment under duress. The court finds Defendants' efforts in this regard entirely unpersuasive. The statutes, regulations, and testimony presented at the hearing convince the court that Plaintiffs were required to stamp bottles prior to shipment into the state.[6] The notion that Plaintiffs were altruistic volunteers is ridiculous.

This conclusion is bolstered by reference to Plaintiffs' Exhibit CCC, a letter from Chet C. Bryant, Director of the Alcohol and Tobacco Tax Unit, to Fred B. Kitchens, Jr., of Wine and Spirits Wholesalers of Georgia. This letter explains how the transition from the tax-stamp system to the wholesaler-re-

porting system would be accomplished. Pursuant to this transition policy, wholesalers would be allowed to receive unstamped bottles for a short period prior to the effective date of the reporting system. The obvious implication of this letter is that the wholesalers were *not* permitted to receive unstamped bottles *prior* to this transition period.

The court also notes the testimony of Gregory Altschuh, regulatory counsel for Plaintiff Seagram. During his testimony, Mr. Altschuh stated that in the last five years, of the time he had spent focusing on state tax issues, about 90% of that time was devoted to Georgia. (Transcript at 154–55). Mr. Altschuh is responsible for regulatory issues in all 50 states and some foreign countries. (*Id.*). He characterized Georgia's system of alcohol regulation and taxation as being one of the most activist in the nation.

## II. ANALYSIS OF THE ADEQUACY OF STATE REMEDIES FOR PURPOSES OF THE TAX INJUNCTION ACT

■ The Tax Injunction Act, 28 U.S.C. § 1341, is a specific statutory limitation on federal court jurisdiction. "The statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). The last of these factors was the principal motivating force behind the Act. *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 1234, 67 L.Ed.2d 464 (1981) ("this legislation was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes"). Therefore, if there is a "plain, speedy and efficient" remedy provided by the

---

**6.** The Revenue Rules support Plaintiffs' argument that the distillers were required to place stamps on the bottles prior to shipment inside the state. Rules 560–2–3–.01 and –.03 define a "registered producer" as a manufacturer or distiller which has its distilleries or plants located outside of Georgia. Rule 560–2–3–.22 states that only a registered producer may ship distilled spirits into the state. Rule 560–2–3–.09 provides that distilled spirits may not be moved into the

state unless each bottle bears a tax stamp. Finally, Rule 560–2–3–.32 requires inspection upon arrival of distilled spirits at an in-state warehouse; if tax stamps are not affixed, the producer's representative is required to notify the Commissioner immediately. (*See* Plaintiffs' Exh. PP(1)–PP(8)). The implication of these regulations is clear: distillers are supposed to place stamps on the bottles prior to shipment into the state.

state system, a federal court cannot enjoin collection of taxes.

■ It is clear that an injunction is not the only federal court action prohibited by § 1341. A declaratory judgment, because it has virtually the same effect as an injunction, is also barred by the Act. *California v. Grace Brethren Church*, 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982).[7] Thus, all remedies requested by Plaintiffs are contingent on a finding that there is no "plain, speedy and efficient" remedy in the state courts.

■ The phrase "plain, speedy and efficient" is not self-explanatory. In *Rosewell, supra,* the Supreme Court held that this standard should be defined in terms of procedural rather than substantive criteria. The Court went on to state that the test of an adequate state court procedure is whether it provides taxpayers "with a 'full hearing and judicial determination' at which [they] may raise any and all constitutional objections to the tax." *Rosewell*, 450 U.S. at 514, 101 S.Ct. at 1230. The "plain, speedy and efficient" exception to the Tax Injunction Act must be construed narrowly. *Grace Brethren*, 457 U.S. at 413, 102 S.Ct. at 2510. The district court should not analyze the substantive sufficiency of the state remedies, but should scrutinize the totality of state court remedies to determine whether Plaintiffs have some opportunity to raise their constitutional objections. *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1245 (11th Cir.1991).

Plaintiffs have vigorously attacked the adequacy of state remedies to protect their federal rights. They argue that requiring them to return to the state system will subject them to long, complicated, burdensome procedures with an uncertain outcome, which will result in a worthless "remedy" even if they are successful. Defendants, on the other hand, assert that state court remedies are more than adequate for Plaintiffs to assert their constitutional claims.

■ Plaintiffs argue that they will be required to pursue a host of confusing and pointless administrative proceedings prior to ever being able to raise their constitutional claims. A state remedy may be plain, speedy, and efficient even though it requires exhaustion of an administrative remedy. *Rosewell*, 450 U.S. at 507–08, 101 S.Ct. at 1226–27; *Southland Royalty Co. v. Navajo Tribe of Indians*, 715 F.2d 486, 490 (10th Cir.1983). However, if the administrative remedy is exclusive and does not permit the litigants to raise their constitutional claims, it is not "plain, speedy and efficient." *Williams v. City of Dothan*, 745 F.2d 1406 (11th Cir.1984). In order to determine whether the remedies provided in the Georgia courts are "plain, speedy and efficient," it is necessary to explore the statutory alternatives in some detail.

### A. *Appeal from Liquor Tax Assessment*

■ Defendants first argue that Plaintiffs could raise their constitutional arguments in an appeal from a liquor tax assessment. O.C.G.A. § 3–2–11(2) provides that the discovery of unpaid taxes after an audit by the Revenue Department will result in an assessment, which can be contested within the agency and then appealed through the Georgia courts. O.C.G.A. §§ 50–13–12, 50–13–19 and 50–13–20. Defendants argue that constitutional questions can be raised on an appeal from such an assessment, thus providing Plaintiffs with an opportunity to air all of their constitutional claims in a judicial forum.

The court finds that this does not provide a "plain, speedy and efficient remedy" by which Plaintiffs can challenge the constitutionality of the alcohol taxation system. In order to pursue the procedure suggested by Defendants, Plaintiffs would have to deliberately refuse to pay taxes which they owe under O.C.G.A. § 3–4–60, and wait for the Revenue Department to conduct an audit and issue an assessment. A deliberate refusal to pay required taxes would subject Plaintiffs to a host of possible penalties, including fines,

---

**7.** "It is plain from this [statutory] language that the Tax Injunction Act prohibits a federal district court, in most circumstances, from issuing an injunction enjoining the collection of state taxes. Although this Court once reserved the question,

we now conclude that the Act also prohibits a district court from issuing a declaratory judgment holding state tax laws unconstitutional." *Grace Brethren*, 457 U.S. at 408, 102 S.Ct. at 2507.

seizure of "contraband" alcoholic beverages, and license revocation. (Transcript at 108–09). These are severe penalties, and if Plaintiffs failed to persuade the Georgia courts that the underlying statute is unconstitutional, Plaintiffs might well be precluded from conducting any more business in the state of Georgia. Furthermore, this remedy depends upon the Revenue Department to act in issuing an assessment, which could take a substantial period of time; there is thus no assurance that this proposed remedy would be "speedy" or "efficient" in any sense of these words. *Retirement Fund Trust of the Plumbing v. Franchise Tax Board*, 909 F.2d 1266, 1273 (9th Cir.1990).

The uncertainties surrounding the appeal of a liquor tax assessment, coupled with the threat of severe penalties if Plaintiffs did not succeed, convinces this court that this remedy is not "plain, speedy and efficient" within the meaning of the Tax Injunction Act. Therefore, this remedy alone does not deprive the court of jurisdiction.

### B. *Appeal from License Denial, Suspension, Revocation*

█ Defendants next argue that Plaintiffs could raise their constitutional claims during an appeal from a denial, suspension, or revocation of an alcohol license. *See* O.C.G.A. § 3–2–3(1); Revenue Rule 560–2–9. Although it is possible that Plaintiffs could raise constitutional questions on appeal, it is preposterous to assert that this procedure constitutes a "plain, speedy and efficient" remedy. As with the liquor tax assessment, it is simply too risky for any alcoholic beverage taxpayer to allow its license to be suspended or cancelled solely to enable it to get into court to challenge the constitutionality of a statute. If the taxpayer were to be unsuccessful in its constitutional arguments, it would effectively be put out of business in this state. Even under the "purely procedural" interpretation of the Tax Injunction Act required by *Rosewell*, a remedy cannot be considered "plain, speedy and efficient" if it allows a taxpayer to present a constitution-

al claim, yet imposes draconian sanctions upon that taxpayer if the constitutional challenges are unsuccessful. *Retirement Fund Trust*, 909 F.2d at 1274.

### C. *Claim to Contraband Alcoholic Beverages*

█ Defendants also point to the procedures relating to contraband alcoholic beverages. Pursuant to O.C.G.A. § 3–2–35, contraband alcoholic beverages may be seized and held by the commissioner. A claim to the contraband property may be made within ten days of seizure, and a hearing is to be held by the commissioner to allow the claimant to show entitlement to the property.[8] An adverse decision by the commissioner is appealable to the Superior Court of Fulton County. § 3–2–35(e).

As with the two previous alleged "remedies," it is patently absurd to assert that § 3–2–35 provides a "plain, speedy and efficient" remedy which allows Plaintiffs to assert their constitutional claims. In order to assert any constitutional claims, a taxpayer would have to intentionally ship unstamped alcohol into Georgia, wait for the Revenue Department to seize its property, wait again for an adverse administrative decision, and then appeal the decision to a superior court. If the taxpayer is unsuccessful in the appeal, it will be subjected not only to the loss of the contraband property but also to other penalties for willful violation of the tax laws. Even if the taxpayer is able to convince the superior court that the constitutional claim is valid, there is no assurance that the unconstitutionality of the tax rate scheme will be a sufficient "justification for noncompliance with this Code section." O.C.G.A. § 3–2–35(d).

In light of the harsh penalties a taxpayer would face in pursuing constitutional challenges under this statute, it is completely unrealistic to believe that a taxpayer could reasonably pursue this "remedy." As a result, the court must conclude that the contraband procedures do not constitute a "plain,

---

**8.** "The burden of proof at such hearing shall be upon the claimant to establish his claim to the items seized and to show compliance with or

justification for noncompliance with this Code section." O.C.G.A. § 3–2–35(d).

speedy, and efficient remedy" for purposes of the Tax Injunction Act.

### D. *The Credit/Refund Remedy*

 The first three remedies proposed by Defendants, discussed above, are clearly inadequate because they essentially require a taxpayer to break the law and then argue that a statute is facially unconstitutional, in the face of severe penalties should the argument fail. The remaining asserted procedures present a much closer question and require a more detailed analysis.

The next procedure to be analyzed is the application for a refund or credit pursuant to O.C.G.A. §§ 3–2–13 and 3–2–14 (hereinafter "the credit remedy"). As explained in the Background section, the credit remedy allows an alcoholic beverage taxpayer to file a claim for taxes which have been improperly paid. If the commissioner concludes that the claim is meritorious, he "may" issue a credit to the taxpayer. § 3–2–13(a). Credits may be issued primarily in cases where the stamps or the stamped goods were lost, damaged, destroyed, or not actually shipped into Georgia; in addition, the 1992 Act provided that credits may be issued if:

> Taxes were paid or stamps were purchased under a statute expressly held to be unconstitutional by a court of last resort and the ground of the protest was the same as the basis for the ruling of unconstitutionality by the court of last resort.

§ 3–2–13(b)(6) [now § 3–2–13(a)(6) ]. Defendants argue that this creates a straightforward procedure, equivalent to a refund remedy, by which Plaintiffs may both raise their constitutional challenges and receive a credit for any unconstitutional taxes. Plaintiffs, by contrast, characterize this as an uncertain, discretionary, circular, and inadequate procedure that, at best, will provide them with a worthless credit after extraordinary delays.

In order to reach the question of whether the credit remedy is "plain, speedy and efficient" for purposes of the Tax Injunction Act, the court must address two side issues which have an impact on the court's analysis. The

first issue is whether the 1993 amendments to the credit remedy statute can be considered by the court in determining jurisdiction. The second question is whether a remedy must satisfy the requirements of procedural due process in order to qualify as "plain, speedy and efficient" under the Tax Injunction Act.

#### 1. *The 1993 Amendments*

The 1993 Act amended O.C.G.A. § 3–2–13 in two ways. First, it deleted the former subsection (a), which had provided (1) that the credit remedy was the *exclusive* remedy and procedure for obtaining refunds or credits for alcoholic beverage taxes; (2) that *no* refunds were to be allowed for alcohol taxes; and (3) that credits were only to be allowed if authorized by § 3–2–13. The second amendment added a new section which allowed the commissioner to issue a refund if a taxpayer had insufficient future tax liabilities to offset a credit.

Defendants desire that the court consider these amendments in the jurisdictional analysis. According to Defendants, these amendments should alleviate the court's concerns that the credit remedy is exclusive and that credits would be worthless to alcoholic beverage manufacturers (which no longer have direct tax liabilities as a result of the change to the reporting system).

Plaintiffs, however, argue that the facts which determine jurisdiction must be determined at the time the complaint was filed, not at some later point. They argue that federal jurisdiction should not be continually re-examined, and cannot be undermined by the whim of a state legislature. Plaintiffs rely primarily on *Spector Motor Serv., Inc. v. O'Connor,* 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951) (*"Spector II "*).[9] In the *Spector* litigation, the district court initially found the Tax Injunction Act not to bar jurisdiction over a challenge to a Connecticut tax. *Spector Motor Serv., Inc. v. McLaughlin,* 47 F.Supp. 671, 674 (D.Conn.1942). The Supreme Court remanded, concluding that *Pullman* abstention was appropriate because

---

**9.** *Spector II* was overruled on other grounds by *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977).

it was unclear whether the state tax statute even applied to the plaintiff. *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944) (*"Spector I"*). In a subsequent declaratory judgment action, the Connecticut Supreme Court held that the statute applied to the plaintiff, but declined to address the Commerce Clause challenge. *Spector Motor Serv., Inc. v. Walsh*, 135 Conn. 37, 61 A.2d 89 (1948). When the case reached the U.S. Supreme Court for a second time, the Court addressed the constitutional issue. However, before reaching the merits, the Court made this statement, upon which Plaintiffs base their argument:

> The United States District Court had jurisdiction over this case in the first instance because of the uncertainty of the adequacy of a remedy in the state courts, and it did not lose that jurisdiction by virtue of the later clarification of the procedure in the courts of Connecticut.

*Spector II*, 340 U.S. at 605, 71 S.Ct. at 510.

Defendants rely primarily on *Garrett v. Bamford*, 582 F.2d 810 (3rd Cir.1978). The *Garrett* court expressly addressed the argument made by Plaintiffs in this case. The Third Circuit concluded that *Spector II* did not set out a general rule that jurisdiction must always and only be determined on the basis of the facts existing at the time of commencement of the action. Instead, the Third Circuit found that the *Spector II* Court was referring to the unique facts of the case, where the Court had directed *Pullman* abstention, and the state courts had subsequently "clarified" the procedure.

The issue of when federal jurisdiction should be measured is complex and interesting, with compelling policy arguments on each side. The Tax Injunction Act expresses a strong federal policy in favor of allowing state courts to handle challenges to state taxes; where there is a post-commencement change which affords a "plain, speedy and efficient remedy" in the state system, the policy underlying the Tax Injunction Act would counsel dismissal of the federal action to allow the taxpayer to pursue that state remedy. This conclusion would appear to be especially true in a case such as this one, where the only relief sought is prospective injunctive and declaratory relief. On the other hand, there is also a policy argument in favor of finality of jurisdictional determinations. Allowing a state legislature to divest a federal court of jurisdiction over a challenge to a state tax law could invite abuse and gamesmanship. A taxpayer could pursue federal litigation for an extended period, and then be deprived of federal jurisdiction just before a declaration on the constitutionality of the state tax.

Fortunately, this court need not resolve these competing arguments, or the true meaning of the cryptic statement in *Spector II*. Even if the court *does* consider the 1993 amendments to the credit remedy, the court believes that the credit remedy does not provide a sufficient "plain, speedy and efficient remedy" to bar jurisdiction under the Tax Injunction Act. This conclusion is explained in further detail *infra*.

### 2. The Due Process Argument

In their post-hearing brief, Plaintiffs rely extensively on *Atchison, Topeka & Santa Fe Ry. v. O'Connor*, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436 (1912) and *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), in support of their proposition that a state must provide a "clear and certain remedy" which contains particular substantive aspects. It appears to the court that these cases have no relevance to the issue of jurisdiction in the instant case. It is true that *Atchison* and *McKesson* discuss the requirements that a state remedy must satisfy in order to qualify as constitutionally adequate. However, both of these cases focused on the adequacy of state remedies under the Due Process Clause, *not* under the Tax Injunction Act.

*Rosewell* made quite clear that the Tax Injunction Act requires *only* a " 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." *Rosewell*, 450 U.S. at 514, 515 n. 19, 101 S.Ct. at 1229, 1230 n. 19. The requirement of a "plain, speedy and efficient remedy" in the Tax Injunction Act is thus *not* equivalent to the elements of an adequate remedy required by the Due Pro-

**1496**

cess Clause. The Tax Injunction Act merely seeks to ensure that the taxpayer has the opportunity to raise all constitutional claims, including due process claims, in state courts, with the potential for ultimate review in the U.S. Supreme Court. The fact that a state proceeding does not necessarily provide a fully "remedial" remedy for due process purposes does not necessarily mean that the Tax Injunction Act's jurisdictional bar is lifted.[10]

In fact, *McKesson* and the recent case of *Harper v. Virginia Dept. of Taxation,* ── U.S. ──, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (also cited by Plaintiffs) appear to demonstrate the proper functioning of the Tax Injunction Act. Both cases arose through the state courts, and the taxpayers were able to raise due process claims which were ultimately heard in the U.S. Supreme Court.

This is not to say, of course, that none of the requirements of due process are necessary for a "plain, speedy and efficient remedy" under the Tax Injunction Act. But *Harper, McKesson,* and *Atchison* do not stand for the proposition that the Tax Injunction Act requires all of the same remedial bells and whistles that are required by the Due Process Clause. Plaintiffs have cited no authority which so holds, and this court believes that *Rosewell* compels the opposite conclusion. As long as the taxpayer has a meaningful and efficient opportunity to raise the constitutional claims, the Tax Injunction Act bars jurisdiction, even if the requirements of the Due Process Clause are not fully satisfied.

### 3. *The Adequacy of the Credit Remedy*

The court will now turn to an analysis of the credit remedy, the statutory remedy which has generated the most heated dispute among the parties. Defendants argue that this statutory scheme provides Plaintiffs with the opportunity to raise their constitutional claims, and to receive a credit or refund if taxes have been paid under an unconstitutional statute. Plaintiffs argue that this "remedy" is totally inadequate because it is

discretionary, uncertain, and fraught with delay.

Plaintiffs describe the credit remedy as a procedural "rollercoaster." The ride begins with a written application for a credit filed with the Alcohol and Tobacco Tax Unit of the Revenue Department. O.C.G.A. § 3-2-14(b). The statute of limitations for filing a claim is 90 days, so Plaintiffs must file a new claim at least every 90 days in order to cover their continuously-paid taxes. O.C.G.A. § 3-2-14(a). The claim must, of course, specify the grounds for the claim for credit. In this case, Plaintiffs must satisfy the requirements of § 3-2-13(a)(6):

> Taxes were paid or stamps were purchased under a statute expressly held to be unconstitutional by a court of last resort and the ground of the protest was the same as the basis for the ruling of unconstitutionality by the court of last resort.

If the commissioner makes an adverse ruling, or fails to rule within a year of the filing, the taxpayer may institute an action for a credit or refund in a superior court. § 3-2-14(b).

The first flaw Plaintiffs point to in this procedure is the frequency of the required filings. The fact that a statutory scheme requires filings every 90 days is not, by itself, sufficient to render a procedure inadequate for purposes of the Tax Injunction Act. *See Waldron v. Collins,* 788 F.2d 736 (11th Cir. 1986) (absence of state class action not inadequate under Tax Injunction Act); *cf. Winicki v. Mallard,* 783 F.2d 1567 (11th Cir.1986) (federal jurisdiction barred by comity even though taxpayers would have to file a class action suit in each of sixty-seven counties). However, frequent filings are one factor which may be considered along with other alleged inadequacies in assessing the totality of state remedies. *Rosewell,* 450 U.S. at 518 n. 22, 101 S.Ct. at 1231 n. 22.

The next alleged defect is the one-year waiting period which must pass before the taxpayer can get into court, if the commissioner declines to rule on the application. A requirement that a taxpayer exhaust admin-

---

**10.** In *Rosewell,* the Supreme Court noted that "[u]nder the Illinois refund procedure, a taxpayer may raise all constitutional objections, including those based on the State's failure to pay

interest or to return all unconstitutionally collected taxes, in the Illinois legal refund proceeding." *Id.,* 450 U.S. at 515 n. 19, 101 S.Ct. at 1230 n. 19.

istrative remedies does not, by itself, render a procedure inadequate for purposes of the Tax Injunction Act. *Grace Brethren*, 457 U.S. at 416 n. 35, 102 S.Ct. at 2512 n. 35. However, an extensive delay may implicate the "speedy" requirement, particularly where the taxpayer presents evidence that the Revenue Department has a record of not ruling on applications within the year time period. *Rosewell*, 450 U.S. at 518–21, 101 S.Ct. at 1231–33.

The evidence presented at the hearing does show that the Revenue Department has dragged its feet in processing Plaintiffs' claims. Probably the best evidence of this is Defendants' Exhibit 3, a collection of correspondence between Plaintiffs' counsel and Herman Oliver, Tax Conferee for the Alcohol and Tobacco Tax Unit. In those letters, Mr. Oliver repeatedly asks for more information about the basis for the claims, despite repeated offers by Plaintiffs' counsel to provide records, other documents, written explanations, or oral explanations. Mr. Oliver also stated that the Department took no action on the applications because he had learned that Plaintiffs had filed declaratory judgment actions in state and federal court, despite no indications from Plaintiffs that they did not want their claims to be processed administratively.[11]

Even if the Revenue Department were to actually consider an application, the statute appears to create a circular procedure. The Revenue Department cannot issue a credit under § 3–2–13(a)(6) because no statute has yet been held unconstitutional. Therefore, the statute requires the Revenue Department to deny the claim. If the taxpayer then files a complaint in a superior court for recovery of a credit, it is unclear what the superior court is required to do. If the superior court strictly follows the statute, it would simply affirm the denial of the claim by the Revenue Department, because all of the conditions for granting the claim had not been satisfied.

Even if the superior court took a more expansive view and addressed the taxpayer's constitutional claims, the remainder of the procedure remains very murky. If the superior court declared the tax statute unconstitutional, it is unclear whether the court could simply award a credit; the statute appears to require the taxpayer to return to the Revenue Department for a new ruling, now that the conditions have been satisfied. Of course, the Revenue Department may not rule on the remanded claim for a year, at which time the taxpayer would finally be able to return to superior court for another action for a credit.

The statute also fails to define "court of last resort." Thus, there is no way to determine whether the legislature intended for the commissioner to issue a refund if a superior court declares a statute unconstitutional, but that declaration is not appealed to a higher court. If a "court of last resort" means only the Georgia Supreme Court or the U.S. Supreme Court, Plaintiffs may not be able to reach either of those courts because of discretionary certiorari jurisdiction.

Plaintiffs also complain that the credit statute injects an inappropriate degree of discretion into the credit procedure by the use of the word "may" in the first sentence.[12] Herman Oliver testified that the Revenue Department would always issue a credit or refund if the statutory prerequisites were satisfied; however, he also testified that the Department had never awarded any credits under § 3–2–13(a)(6). (Transcript at 120–23, 135–36). Furthermore, Mr. Oliver's testimony at the hearing is in some conflict with his prior affidavit dated July 31, 1992, submitted in the *Beam* case. (Plaintiffs' Exhibit BBB). In that affidavit, Mr. Oliver states:

It is the Revenue Department's administrative interpretation that it is within the State Revenue Commissioner's discretion whether to issue a repayment in the form of a credit or a refund, if otherwise properly grantable, and refunds in the form of a

---

11. It also appears that the Alcohol and Tobacco Tax Unit has not yet ruled on applications submitted by Plaintiffs in *1985*. *See*, Hearing Transcript at 51, 52, 124–32, 135.

12. "The commissioner may issue credits ... when it is shown to the commissioner's satisfaction that any of the following events have occurred...." O.C.G.A. § 3–2–13(a).

repayment are not granted, except perhaps to compromise a disputed matter.[13] *Id.,* ¶ 18. It is not clear what standard of review a Georgia court would use if the commissioner were to deny a credit as a matter of discretion.

The next alleged flaw in the credit procedure is that it requires the taxpayer to pay the taxes under protest, and to predict the specific grounds upon which a court will hold the statute unconstitutional in the future. Plaintiffs argue that this "crystal ball" provision does not make the remedy "plain, speedy and efficient."

The final complaint about the credit procedure is that it does not allow the commissioner to issue a credit to any taxpayer which has passed the tax along to a subsequent purchaser. O.C.G.A. § 3–2–13(b). On the surface, this provision appears to be entirely sensible; a manufacturer should not be able to recover a tax refund for taxes for which it has already been reimbursed. However, this provision has important consequences for Tax Injunction Act purposes. Simple economic principles suggest that a higher tax on Plaintiffs than on in-state manufacturers will lead to either a higher price for Plaintiffs' products on the store shelves, or else a slimmer profit margin for each bottle sold. (*See* Transcript at 167–69). A relatively higher price will lead to relatively lower sales, which will lead to decreased profits; the alternative of a smaller profit margin will also lead to decreased profits. Therefore, even if Plaintiffs "pass on" the tax to subsequent customers, and ultimately the consumer, Plaintiffs are still economically disadvantaged by the double-tax.

Even if the statute is blatantly unconstitutional, Plaintiffs will be unable to receive any tax credits for past taxes paid, because of the operation of O.C.G.A. § 3–2–13(b). More importantly for Tax Injunction Act purposes, it is likely that the Revenue Department will deny a claim for a credit on this ground

alone, without ever reaching the merits of Plaintiffs' claim. Furthermore, an appeal to superior court will likely have the same fate; because Plaintiffs are precluded from receiving a credit for any taxes, the superior court will likely deny the claim on the pass-through grounds, without finding any need to reach the constitutional challenges to the double-tax statute. If so, it would appear that Plaintiffs would never have a " 'full hearing and judicial determination' at which [they] may raise any and all constitutional objections to the tax." *Rosewell,* 450 U.S. at 514, 515 n. 19, 101 S.Ct. at 1230 n. 19.

In light of the numerous deficiencies, ambiguities, and uncertainties found throughout the credit remedy statutes, the court must conclude that the credit remedy does not provide a "plain, speedy and efficient remedy" by which Plaintiffs may raise all of their constitutional claims. The procedure is confusing and circular, and involves significant delays, both in theory and in practice. Most importantly, there is no assurance that Plaintiffs can ever raise their constitutional challenges to the tax in a state judicial forum. Until this statute is more clearly defined by the legislature or by the state courts, this court must find that the credit remedy does not bar federal jurisdiction of these claims.[14]

### E. *Administrative Declaratory Ruling*

■ Defendants next argue that Plaintiffs could pursue an administrative declaratory ruling through the Revenue Department, and thus have their claims adjudicated. Defendants also argue that the availability of superior court review is sufficient to make this procedure a "plain, speedy and efficient remedy."

The administrative declaratory ruling procedure is outlined at O.C.G.A. §§ 50–13–11 through 50–13–20 and at Revenue Reg. 560–1–1–.10. It provides that each agency shall provide a procedure by which an aggrieved

---

**13.** It is true that this affidavit is directed to the credit and refund statute as it existed between 1982 and 1984. However, the only difference between that statute and the current credit remedy statute is the addition of the sixth possible ground for issuing a credit. Both versions of the statute contain the same "may" language.

**14.** The court notes that this decision is reached even in light of the 1993 amendments to the credit remedy.

party may receive an adjudication by the agency; in the case of the Department of Revenue, a hearing must be held upon request by the aggrieved taxpayer. O.C.G.A. §§ 50–13–11, 50–13–12. An adverse decision may be appealed to a superior court, and then to the Georgia Court of Appeals and/or the Georgia Supreme Court. O.C.G.A. §§ 50–13–19, 50–13–20.

However, § 50–13–11 specifically provides that a ruling may be made under this procedure "as to the applicability of any statutory provision or of any rule or order of the agency. . . ." The very terms of this statute limit the scope of an administrative declaration to the issue of whether a particular statute or rule *applies* to a taxpayer, not whether the statute itself is facially unconstitutional. The Georgia Supreme Court has recognized "that where the constitutional validity of a statute is challenged before an administrative hearing officer or board, such officer or board is powerless to declare the Act unconstitutional. . . ." *Flint River Mills v. Henry*, 234 Ga. 385, 386, 216 S.E.2d 895 (1975). Even if an agency could consider the constitutionality of the *application* of a statute to a party, the court finds it unlikely that the agency could possibly address the facial constitutional validity of a statute.[15]

■ Defendants argue that the facial constitutional question may be considered on appeal by the superior court. It is true that § 50–13–19(h) provides that a superior court may reverse or modify an agency declaration if it is "in violation of constitutional or statutory provisions." However, Defendants have cited no cases under this statute in which a superior court has reviewed an agency declaration and declared the underlying statute

unconstitutional. The court believes that such judicial review would generally be limited to a review of what the agency was actually able to address and decide, rather than a *de novo* review of the constitutionality of the underlying statute. *Compare, Flowers v. Georgia Real Estate Commission*, 141 Ga. App. 105, 232 S.E.2d 586 (1977), *and Department of Public Safety v. Foreman*, 130 Ga. App. 71, 202 S.E.2d 196 (1973), *with Flint River Mills v. Henry*, 234 Ga. 385, 216 S.E.2d 895 (1975). Where the scope of state court review of an administrative decision appears to be limited by statute so as to preclude the airing of all constitutional claims, the state court review does not satisfy the requirements of the Tax Injunction Act. *Williams v. City of Dothan*, 745 F.2d 1406 (11th Cir.1984).

In light of the uncertainty of the actual scope of a state court's review, this court cannot conclude that the administrative declaratory ruling and hearing procedures provide a "plain, speedy and efficient" remedy. *See Barringer v. Griffes*, 964 F.2d 1278, 1283–84 (2nd Cir.1992). This court's jurisdiction cannot be barred by the existence of a procedure which, by its very terms, is inapplicable to the type of challenge raised by Plaintiffs.[16] For these reasons, the court finds that the administrative hearing and ruling procedures under O.C.G.A. § 50–13–11 and § 50–13–12 are insufficient to provide a "full hearing and judicial determination" of Plaintiffs' constitutional claims.

### F. Suit for Injunction or Declaratory Judgment

■ The final proposed procedure for asserting Plaintiffs' constitutional claims is a

---

**15.** Defendants refer to testimony of Herman Oliver, who testified that the Revenue Department would consider and rule on constitutional questions if presented, after consultation with the Law Department. However, Mr. Oliver was unable to recall an instance in which a constitutional challenge to a statute was addressed using this procedure. Furthermore, it is irrelevant what an agency employee believes, if the statute does not grant the agency the authority to address constitutional questions.

**16.** Although not relied upon for this conclusion, the court also notes that there is an issue regarding the exclusivity of the credit remedy proce-

dure. If this court should only consider the facts as they existed at the commencement of the action (an issue discussed but not decided *supra*), there would be no doubt that the administrative declaratory ruling procedure was not a "plain, speedy and efficient remedy." At that time, the 1993 Act had not yet been enacted, and the 1992 Act had specified that the credit remedy was the "exclusive" remedy for alcoholic beverage taxpayers. Of course, it has not been clearly established by any Georgia court that the 1993 repeal of the exclusivity language actually makes the credit remedy non-exclusive.

suit brought directly in superior court for injunctive and/or declaratory relief.

A number of courts in this circuit have held that declaratory and injunctive relief available in state court is sufficient to bar federal court jurisdiction under the Tax Injunction Act. *See, Noble v. Joint City–County Board of Tax Assessors*, 672 F.2d 872, 875 (11th Cir.1982) ("For the very reason that the arbitration system is an inadequate legal remedy, a suit in equity is available."); *Kiker v. Hefner*, 409 F.2d 1067, 1070 (5th Cir.1969) ("This Court has long recognized that a remedy by injunction in a state court is a plain, speedy and efficient remedy."); *Adams v. Smith*, 415 F.Supp. 787 (N.D.Ga.1976), *aff'd* 568 F.2d 1232 (5th Cir.1978); *see also, Tully v. Griffin*, 429 U.S. 68, 74–76, 97 S.Ct. 219, 223–24, 50 L.Ed.2d 227 (1976) (New York declaratory judgment action sufficient to bar federal jurisdiction); *Osceola v. Florida Dept. of Revenue*, 893 F.2d 1231 (11th Cir.1990) (declaratory and injunctive relief were among several remedies precluding federal jurisdiction), *cert. denied* 498 U.S. 1025, 111 S.Ct. 674, 112 L.Ed.2d 667 (1991); *Comenout v. State of Washington*, 722 F.2d 574 (9th Cir.1983) (same); *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428 (2nd Cir.1989) (availability of declaratory judgment action is sufficient to bar federal jurisdiction); *Hardwick v. Cuomo*, 891 F.2d 1097 (3rd Cir.1989) (same).

Plaintiffs argue that even if an action for declaratory relief is theoretically available to them, it would not be a "plain, speedy and efficient remedy" as a practical matter. They raise several issues in support of this argument.

First, Plaintiffs argue that a Georgia superior court will feel compelled to defer to an existing statutory scheme rather than grant equitable relief. There is case authority in Georgia for both sides of this proposition. Defendants cite a number of cases in which Georgia courts have allowed declaratory or injunctive actions to proceed despite the existence of a statutory refund or credit scheme (in many cases, the general refund statute outlined in O.C.G.A. § 48–2–35). *Blackmon v. Alexander*, 233 Ga. 832, 213 S.E.2d 842 (1975); *Blackmon v. Golia*, 231 Ga. 381, 202

S.E.2d 186 (1973); *Parrish v. Employees' Retirement System*, 260 Ga. 613, 398 S.E.2d 353 (1990); *State v. Private Truck Council of America, Inc.*, 258 Ga. 531, 371 S.E.2d 378 (1988); *City Council of Augusta v. Mangelly*, 243 Ga. 358, 254 S.E.2d 315 (1979); *Richmond County Property Owners Ass'n v. Augusta–Richmond County Coliseum Authority*, 233 Ga. 94, 210 S.E.2d 172 (1974); *City of Lithonia v. DeKalb County Board of Education*, 231 Ga. 150, 200 S.E.2d 698 (1973); *Robbins v. City of Rome*, 230 Ga. 901, 199 S.E.2d 802 (1973); *DeKalb County v. Allstate Beer, Inc.*, 229 Ga. 483, 192 S.E.2d 342 (1972).

Plaintiffs cite other cases which appear to require deferral to statutory administrative proceedings. *George v. Department of Natural Resources*, 250 Ga. 491, 299 S.E.2d 556 (1983); *Brogdon v. State Board of Veterinary Medicine*, 244 Ga. 780, 262 S.E.2d 56 (1979); *Flint River Mills v. Henry*, 234 Ga. 385, 216 S.E.2d 895 (1975). These decisions were grounded in concerns about disruption of administrative proceedings in cases where a party sought a declaratory judgment regarding the constitutionality of a statute prior to the completion of the administrative proceedings. This court does not believe that these precedents are applicable to a case in which the entire claim is a challenge to the constitutionality of the underlying statute; in such a case, deferral to an agency is useless because, as the Georgia courts have stated, the agency "is powerless to declare the Act unconstitutional." *Flint River Mills*, 234 Ga. at 386, 216 S.E.2d 895. The numerous cases cited *supra* indicate that the Georgia courts will entertain an action for declaratory or injunctive relief where the sole issue is the constitutionality of a tax statute and the case will not disrupt an ongoing administrative proceeding.

In fact, the *Heublein* litigation previously pursued by one of the instant Plaintiffs proceeded as an action for declaratory and injunctive relief. Although the superior court denied injunctive relief, the superior court and the Georgia Supreme Court ruled on the merits of Heublein's Commerce Clause challenges.

Plaintiffs also appear to argue that an action for declaratory and injunctive relief would not be adequate because it would not permit the taxpayer to withhold the tax, and would also not provide a refund of taxes previously paid. However, the court does not believe that this is a valid argument under the Tax Injunction Act. As discussed previously, the due process considerations at issue in *McKesson* are not the same issues which must be addressed under the Tax Injunction Act. In *Rosewell*, the Supreme Court repeatedly stated that the Act requires only that Plaintiffs be provided a " 'full hearing and judicial determination' at which [they] may raise any and all constitutional objections to the tax." *Rosewell*, 450 U.S. at 514, 515 n. 19, 101 S.Ct. at 1230 n. 19. In the instant federal court action, Plaintiffs are seeking *only* prospective injunctive and declaratory relief, under which Plaintiffs would be entitled to neither a predeprivation remedy nor a refund. It seems nonsensical to hold that a state proceeding *which would provide the very same relief as the federal proceeding* is inadequate for purposes of the Tax Injunction Act, and that therefore the action must remain in federal court. Such a holding would seem to fly in the face of congressional intent expressed in the Tax Injunction Act "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes" *Rosewell*, 450 U.S. at 522, 101 S.Ct. at 1234. *See also, Ayers v. Polk County*, 697 F.2d 1375, 1377 (11th Cir.1983) ("the Tax Injunction Act ... [does] not require[ ] 'that the state remedy be the best remedy available or even equal to or better than the remedy which might be available in federal court.' " (quoting *Bland v. McHann*, 463 F.2d 21, 29 (5th Cir.1972))).

Finally, the court must address the "exclusivity" of the credit remedy as it relates to the availability of injunctive or declaratory relief. Earlier in this order, the court found it unnecessary to decide whether the 1993 amendments should be considered in order to

17. In other words, if Plaintiffs attempt to pursue a declaratory judgment action in a superior court and are thrown out on the grounds that there is an adequate remedy at law, there would be federal jurisdiction. *See Franchise Tax Board v.*

determine whether the credit remedy was adequate. For similar reasons, the court again finds it unnecessary to address Plaintiffs' "commencement-time" arguments; the availability of declaratory and injunctive relief constitutes a "plain, speedy and efficient remedy" even if the 1993 amendments are *not* considered. The "exclusivity" provision of the 1992 Act stated that O.C.G.A. § 3–2–13 was the "exclusive remedy and procedure for seeking and obtaining any and all refunds or credits" for alcoholic beverage taxes. 1992 Ga.L., p. 1458 § 1. There is nothing in that language which deprives a Georgia court from entertaining an action for prospective declaratory/injunctive relief. As explained in the prior paragraph, the availability of prospective relief in state court bars access to prospective relief in federal court.

For the sole reason that declaratory and injunctive relief is available in the courts of Georgia, this court must conclude that the Tax Injunction Act is a bar to federal jurisdiction. The court emphasizes that it believes the federal courts would be open to Plaintiffs if it is demonstrated that a state court action for injunction or declaratory judgment is not a available remedy.[17]

## III. *OTHER PENDING MOTIONS*

Some of the pending written motions have been recently ruled upon orally by the court at the discovery conference and at the evidentiary hearing. These motions include Plaintiffs' motion to compel discovery, Defendants' motion for protective order, Defendants' motion to limit discovery, and three motions to strike.

There are also several pending motions to file additional briefs in response to various motions. All of these motions are GRANTED.

Finally, all remaining motions (in particular, Plaintiffs' motion for preliminary injunction) are DISMISSED, as the court has no jurisdiction to award the relief sought.

*Alcan Aluminum Ltd.*, 493 U.S. 331, 341, 110 S.Ct. 661, 667, 107 L.Ed.2d 696 (1990) (federal court might be open if California courts actually refuse to hear constitutional claims).

## IV. CONCLUSION

In construing the Tax Injunction Act and the related comity doctrine, the Supreme Court "has woven an almost impenetrable barrier to state tax challenges in federal court." Note, *Clarifying Comity: State Court Jurisdiction and Section 1983 State Tax Challenges*, 103 Harv.L.Rev. 1888, 1890 (1990). Despite a valiant effort by Plaintiffs, the court must conclude that they have failed to penetrate that barrier. After an exhaustive review of the available remedies afforded by state law, the court finds that most of the remedies are not "plain, speedy and efficient" within the meaning of the Tax Injunction Act. However, the availability of an action for declaratory and/or injunctive relief in a superior court provides a "plain, speedy and efficient" remedy, equivalent to the injunctive and declaratory relief sought in this court. The court must therefore conclude that the Tax Injunction Act is a jurisdictional bar to further proceedings in federal court.

Accordingly, Plaintiffs' complaint is hereby DISMISSED on jurisdictional grounds. The various motions to file additional briefs [# 69–1, # 74–1, # 85–1] are all GRANTED nunc pro tunc. Defendants' three motions to strike Plaintiffs' exhibits [# 44–1, # 63–1, # 67–1] are GRANTED IN PART and DENIED IN PART as stated by the court orally at the evidentiary hearing. All other pending motions [# 29–1, # 32–1, # 32–2, # 38–1, # 42–1, # 43–1, # 47–1, # 61–1, # 76–1] are DISMISSED. The Clerk is DIRECTED to dismiss this case for want of jurisdiction.

SO ORDERED.