**Leslie K. JOHNSEN, Plaintiff,**

v.

**Marcus E. COLLINS, Sr., Individually and in his capacity as State Revenue Commissioner, and the State of Georgia, Defendants.**

Civ. A. No. 493–225.

United States District Court,
S.D. Georgia,
Savannah Division.

Nov. 22, 1994.

Wayne Lee Durden, David Royce Smith, Brannen Searcy & Smith, Robert L. Jenkins, Savannah, GA, for Leslie K. Johnsen.

Michael J. Bowers, Daniel M. Formby, Atlanta, GA, Harold David Melton, State Law Dept., Atlanta, GA, for Marcus E. Collins, Sr., State of Ga.

### ORDER

EDENFIELD, District Judge.

Plaintiff brought suit for declaratory relief, injunctive relief, damages, and costs against Defendant Collins and the State of Georgia. Plaintiff argues that the State's automobile title transfer fee provision, O.C.G.A. § 40–3–21.1, institutes an unconstitutional tax on new residents. Although not explicitly stated as such in the complaint, the Court construes this action as one brought under 42 U.S.C. § 1983. Defendants filed a motion to dismiss the action that was subsequently converted to a motion for summary judgment by order of this Court on March 7, 1994. Plaintiff filed a motion for class certification and a cross-motion for summary judgment, as well. Because doctrines of sovereign immunity, comity, and federal statutory law prevent the Court from hearing Plaintiff's claims, those claims are hereby DISMISSED WITHOUT PREJUDICE.

### I. Background

The facts in this case are undisputed and are essentially as follows:

The State of Georgia began collecting an automobile "title transfer fee" on May 1, 1992, pursuant to O.C.G.A. § 40–3–21.1. That statute provides in part:

(a) When a certificate of title is issued for a motor vehicle that, at the time of applying for a certificate of title, is and has been titled in another state or country, a fee shall be levied of a minimum of $40.00 and a maximum of $200.00. The fee shall be based on the value of the vehicle as published in a schedule compiled by the state revenue commissioner; provided, however, that the maximum fee shall apply to all vehicles with a fair market value in excess of $25,000.00. Persons who have paid an equivalent fee on such motor vehicle in the state of origin within 90 days of applying for a new certificate of title in this state shall receive a credit against the fee due under this subsection.

Plaintiff Johnsen moved to Georgia on July 9, 1993, with two automobiles. Upon arrival she applied for certification for one of them and was informed of the transfer fee. She paid it, but later filed suit in state and federal court, alleging various constitutional infirmities with the transfer fee provision.

The parties stipulate that Florida's recently defunct "impact fee" statute, Fla.Stat. § 319.231,[1] was a model for Georgia's transfer fee provision, and that the proceeds of the transfer fee are paid into the general fund of the Georgia State Treasury. See Ga. Rules & Reg. at 506–10–30.04.

The Court is satisfied that the fee is a tax for purposes of constitutional analysis. See generally Gunby v. Yates, 214 Ga. 17, 19, 102 S.E.2d 548 (1958) ("A fee is a charge fixed by law as compensation for a public officer, while a tax is a forced contribution to the public needs of government."); United States v. Butler, 297 U.S. 1, 61, 56 S.Ct. 312, 317, 80 L.Ed. 477 (1936) ("A tax . . . as used in the Constitution, signifies an exaction for the support of the Government."). Plaintiff notes other provisions of the Georgia Code that already compensated the Motor Vehicle Division for its certification labors before implementation of the transfer fee. See O.C.G.A. § 40–3–38. The fee seems clearly designed to bolster State revenues.

The transfer fee implicates various provisions of the United States Constitution. Plaintiff claims that it hinders interstate trade in violation of the Commerce Clause of Art. 1, § 8, cl. 3; restricts interstate travel in

---

1. See Dep't of Revenue, et al., v. Kuhnlein, et al., & Dep't of Highway Safety & Motor Vehicles, et al., v. Adams, et al., 646 So.2d 717 (Fla.1994).

violation of the Privileges and Immunities Clause of Art. 4, § 2; deprives new residents of property in violation of the Due Process Clause of Amend. 14, § 1; and discriminates between nonresidents and residents in violation of the Equal Protection Clause of Amend. 14, § 1. Defendants respond that the State and Defendant Collins are immune from suit, prospective relief is barred by the Tax Injunction Act, 28 U.S.C. § 1341, Plaintiff Johnsen lacks standing, the claims are moot, and the Court should abstain from deciding claims about vital state interests such as those implicated here.

The Court does not reach Plaintiff's constitutional claims, because it finds that the State's sovereign immunity deprives the Court of subject matter jurisdiction over claims for retrospective relief, while comity concerns and federal law deprive it of jurisdiction over claims for prospective relief.

## II. The Eleventh Amendment

The procedural and substantive issues in this "test case" have generated an impressive number of motions, briefs and response briefs, but the simple truth is that the State of Georgia has not consented to suit in federal court on this taxation issue.

The Eleventh Amendment to the United States Constitution states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

■ Although the express language of the amendment does not bar actions against a State by its own citizens, the United States Supreme Court has held that an unconsenting State is immune from lawsuits brought in federal court by its own citizens, as well. *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890). Plaintiff argues that this expansion of the Eleventh Amendment is historically controversial, e.g., *Papasan v. Allain*, 478 U.S. 265, 292–93, 106 S.Ct. 2932, 2947–48, 92 L.Ed.2d 209 (1986) (Brennan, J., dissenting) (criticizing *Hans*), *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 258–302, 105 S.Ct. 3142, 3156–78, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting) (presenting a lengthy critique of modern Eleventh Amendment jurisprudence), but it is supported by approximately one hundred years of Supreme Court precedent. *See, e.g., North Carolina v. Temple*, 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849 (1890); *Fitts v. McGhee*, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535 (1899); *Smith v. Reeves*, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1907); *Palmer v. Ohio*, 248 U.S. 32, 39 S.Ct. 16, 63 L.Ed. 108 (1918); *Ex Parte New York*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); *Missouri v. Fiske*, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145 (1933); *Great Northern Life Ins. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952); *Parden v. Terminal Railway*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Employees v. Missouri Dep't of Health & Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). The Eleventh Amendment is a jurisdictional bar precluding all relief for private plaintiffs against unconsenting States at the federal level. *See Pennhurst State Schl. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1983) ("This jurisdictional bar applies regardless of the nature of the relief sought."); *Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982) (refusing to construe the Court's decision in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) as having "limit[ed] the strictures of the Eleventh Amendment" to bar only suits seeking money damages); *Missouri v. Fiske*, 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) ("[T]he amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against the state.").

■ As with most things legal, there are some exceptions. The State may expressly waive its immunity from suit, *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360–61, Congress

may abrogate the States' immunity in certain circumstances, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), and while Eleventh Amendment immunity extends to state officers when "the state is the real, substantial party in interest," *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), those officers can be enjoined from future unconstitutional conduct. *Edelman*, 415 U.S. at 666–67, 94 S.Ct. at 1357–58; *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The instant case requires the Court to consider all three possibilities.

## A. Waiver

The last time the Supreme Court assumed original jurisdiction over a suit brought by a private citizen against a neighboring State, *Chisholm v. Georgia*, 2 Dall. 419, 1 L.Ed. 440 (1793), the resulting "shock of surprise" led to the rapid proposal and adoption of the Eleventh Amendment. *See Monaco v. Mississippi*, 292 U.S. 313, 325, 54 S.Ct. 745, 749, 78 L.Ed. 1282 (1934). That federalist outcry lingers throughout sovereign immunity jurisprudence: In order to waive its immunity from suit, a State's consent must be clearly, unequivocally expressed. *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360–61. Waivers are narrowly construed and almost never implied. Further, a State's waiver of Eleventh Amendment immunity in its own courts is not a waiver of its immunity in federal courts. *See, e.g., Florida Dept. of Health & Rehab. Serv. v. Florida Nursing Home Assoc.*, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034–35, 67 L.Ed.2d 132 (1981) (per curiam); *Ford Motor Co.*, 323 U.S. at 464–65, 65 S.Ct. at 350–51; *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct. 873, 877, 88 L.Ed. 1121 (1944).

> [I]t is not consonant with our dual system for the federal courts ... to read the consent to embrace federal as well as state courts.... [A] clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found.

*Great Northern*, 322 U.S. at 54, 64 S.Ct. at 877.

This final caveat guides this Court today. The State of Georgia has explicitly consented to actions seeking recovery of taxes "erroneously and illegally assessed and collected ... under the laws of this state." O.C.G.A. § 48-2-35(a)–(d). Awards are drawn directly from the state treasury. *Id.* at (a). Action may only be taken, however, in "the superior court of the county of the residence of the taxpayer," *id.* at (a)(4), or, if the taxpayer is a nonresident, in the Superior Court of Fulton County or in the superior court of the county in which the state revenue commissioner resides. *Id.* at (a)(4)(B). These provisions are not enough to confer jurisdiction on federal courts in Georgia. *See Ford Motor Co.*, 323 U.S. at 465–66, 65 S.Ct. at 351–52 ("The provision in this section which vests original jurisdiction of suits for refund in the 'circuit or superior court of the county in which the taxpayer resides or is located' indicates that the state legislature contemplated suit in the state courts." (footnote omitted)); *Henderson v. Carter*, 229 Ga. 876, 195 S.E.2d 4 (1972) (holding that Georgia refund statute signifies state waiver of immunity only to the extent provided by the express terms of the statute). This Court is thus barred from hearing Plaintiff's claims against the State for damages or prospective relief.

## B. Abrogation

Plaintiff argues that Congress actually abrogated state sovereign immunity for constitutional claims by passing 42 U.S.C. § 1983, but this argument is clearly incorrect. *See Quern v. Jordan*, 440 U.S. 332, 342, 99 S.Ct. 1139, 1145–46, 59 L.Ed.2d 358 (1979) (holding that § 1983 does not override States' Eleventh Amendment immunity); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64–67, 109 S.Ct. 2304, 2308–10, 105 L.Ed.2d 45 (1989) (holding that States and State officials acting in their official capacities are not "persons" subject to liability under § 1983). Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum to litigants suing a State for deprivations of civil liberties. That Congress, in passing § 1983, had no intention to disturb States' Eleventh Amendment immunity and

thus alter the federal-state balance of power was made clear fifteen years ago in *Quern.*

On a similar tack, Plaintiff argues that the jurisdictional counterpart of § 1983, 28 U.S.C. § 1343(a)(3), also reveals a congressional intent to grant federal jurisdiction over federal constitutional claims against States. Plaintiff, however, provides no supporting authority for this proposition, and the Court is sure that had Congress intended such a result it would have said so. *See Will,* 491 U.S. at 65, 109 S.Ct. at 2309. In fact, Congress could not have ensured such a result without making its intentions "unmistakably clear in the language of the statute." *Atascadero,* 473 U.S. at 242, 105 S.Ct. at 3147. *See, e.g., Schl. Bd. v. Louisiana State Bd. of Elementary & Secondary Education,* 830 F.2d 563 (5th Cir.1987), *reh'g denied,* 836 F.2d 1346 (5th Cir.1987), *cert. denied,* 487 U.S. 1223, 108 S.Ct. 2884, 101 L.Ed.2d 918 (1988) (performing sovereign immunity analysis despite jurisdiction under § 1343). Meanwhile, the Supreme Court has stated that § 1343 is narrower in scope than § 1983. *Fair Assessment in Real Estate Assoc. v. McNary,* 454 U.S. 100, 104 n. 3, 102 S.Ct. 177, 180 n. 3, 70 L.Ed.2d 271 (1981); *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979).[2]

## C. Prospective Relief Against a State Officer "in His Official Capacity"

■ The Eleventh Amendment, however, does not bar all forms of prospective relief that might impact the State. Where the plaintiff names a state official as a defendant, as is the case here, the analysis becomes less straightforward. The Supreme Court held in *Ex Parte Young* that a suit to enjoin a state official's actions as unconstitutional is not barred by the Eleventh Amendment. The Court reasoned that an unconstitutional state law is void from inception and that any action by a state official that is purportedly authorized by that law cannot logically be taken in an official capacity since the state authorization for the action does not exist.

> If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

209 U.S. at 159–60, 28 S.Ct. at 454. So a state official, although acting in his official capacity,[3] may be sued in federal court. *See also Pennhurst,* 465 U.S. at 102, 105, 104 S.Ct. at 908–09, 910–11; *Hutto v. Finney,* 437 U.S. 678, 692, 98 S.Ct. 2565, 2574, 57 L.Ed.2d 522 (1978). It is by this point a "well-recognized irony" that while an official's unconstitutional conduct is not protected by the Eleventh Amendment, it still constitutes state action under the Fourteenth. *Pennhurst,* 465 U.S. at 105, 104 S.Ct. at 910–11. This facially illogical result appears necessary to guarantee the vindication of federal rights. *See id.*

*Young,* however, does not insulate from Eleventh Amendment challenge every suit in which a state official is the named defendant. In accordance with its original rationale, it applies only where the underlying state authorization for the state official's acts is challenged as illegal. *See Cory,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982). And it does not foreclose an Eleventh Amendment challenge where the official action is claimed illegal as a matter of state law alone, *see Pennhurst,* 465 U.S. at 104–06, 104 S.Ct. at 910–11; in those cases, the supremacy of

---

**2.** Section 1343 is also trumped by the Tax Injunction Act. *See Osceola v. Florida Dep't of Revenue,* 893 F.2d 1231 (11th Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 674, 112 L.Ed.2d 667 (1991) (denying jurisdiction on basis of Tax Injunction Act despite presence of § 1343 claim). *See infra,* part III.

**3.** The general rule is that "relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (per curiam). This connection usually confers the immunity of the sovereign onto its officers when they act in their official capacities.

federal law is not implicated. *See* U.S. Const. Art. VI.

 The *Young* doctrine also focuses on cases in which violations of federal law by a state official are ongoing, as opposed to those in which federal law has been violated at some point in the past.[4] Relief that in essence compensates a party for past injuries caused by a state official is barred even when the official is a named defendant. This is true if the relief demanded is monetary damages, e.g., *Ford Motor Co.*, 323 U.S. 459, 65 S.Ct. 347, or is tantamount to the same. *E.g.*, *Green*, 474 U.S. at 69–70, 106 S.Ct. at 426–27; *Edelman*, 415 U.S. at 664–68, 94 S.Ct. at 1356–58. However, relief that serves directly to bring an end to a present and continuing violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury. *See Milliken v. Bradley*, 433 U.S. 267, 289–90, 97 S.Ct. 2749, 2761–62, 53 L.Ed.2d 745 (1977). The rule of thumb is that prospective relief against a state officer is not precluded by the Eleventh Amendment, although the distinctions are sometimes difficult. *See Edelman*, 415 U.S. at 667, 94 S.Ct. at 1357 ("[T]he difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex Parte Young* will not in many instances be that between day and night."), at 668–669, 677, 94 S.Ct. at 1358–1359, 1362–63. *See also Melof v. Hunt*, 718 F.Supp. 877, 879 (M.D.Ala.1989) (noting prospective/retrospective distinction under *Young*).

Here, Plaintiff has named Marcus Collins, the State Revenue Commissioner, as a defendant in his official as well as his individual capacity. She makes claims for damages, costs, declaratory relief, and injunctive relief. The claims against Collins in his individual capacity are disposed of in part IV, *infra.* As for claims against him in his official capacity, the claim for damages is a demand for a tax refund. As such, it is retrospective, implicates the state coffers, and is barred as

above. Declaratory and injunctive relief, however, is not similarly blocked, nor is the loss of funds that would result from a judicial injunction against enforcement of the transfer fee provision. *See Edelman*, 415 U.S. at 667–69, 94 S.Ct. at 1357–58 (discussing "ancillary" nature of such losses).

Although Plaintiff's claims for prospective relief against Collins in his official capacity survive the Court's Eleventh Amendment analysis, they run headlong into the federal Tax Injunction Act, which severely limits federal jurisdiction over state taxation disputes.

### III. The Tax Injunction Act

 This statute states, simply and in its entirety, that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. It extends to claims for declaratory relief. *See California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507–08, 73 L.Ed.2d 93 (1982).

The Act echoes comity concerns that have for years guided federal courts presented with challenges to state fiscal operations. It is firmly settled that a federal court should not interfere with a State's manner of collecting taxes—its primary source of funding—unless the court is convinced that no adequate state remedy exists for a plaintiff's claims. Proper respect for the dual nature of our federal system requires no less. Under the comity doctrine, the available state remedy must be "plain, adequate and complete," before a federal court will abstain from exercising jurisdiction. *See, e.g., Fair Assessment*, 454 U.S. at 116 & n. 8, 102 S.Ct. at 186 & n. 8. This comity standard is conceptually indistinguishable from the "plain, speedy and efficient" requirement of the Tax Injunction Act, *Williams v. City of Dothan*, 745 F.2d 1406, 1411 n. 6 (11th Cir. 1984), *appeal after remand*, 818 F.2d 755

---

4. *Young* is also intended for those cases in which the relief against the state official directly ends the violation of federal law, as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through

deterrence or directly to meet third-party interests such as compensation. *See Green v. Mansour*, 474 u.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985).

(1987); the latter is a congressional articulation of the former.

As the Eleventh Circuit noted in *Williams,* the Supreme Court has invoked comity—rather than relying solely on the Tax Injunction Act—when the prospective relief sought extended beyond injunctive relief. *See, e.g., Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943) (invoking principles of federalism to support holding that federal court should refuse to grant declaratory judgment). As stated, however, the Tax Injunction Act has itself been extended to declaratory relief. *See Grace Brethren Church,* 457 U.S. at 408, 102 S.Ct. at 2507–08. The now roughly similar parameters of the comity doctrine and the Act might then tempt one to decide that comity concerns play no role beyond those embodied in the Act, but such a conclusion would be misguided. For example, in *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1980), the Supreme Court made clear that while the Act, passed in 1937, "has its roots in equity practice," nothing in the legislative history or subsequent jurisprudence implied that the Act accounted for "every wrinkle of federal equity practice." *Id.* at 525, 101 S.Ct. at 1235. *See Matthews v. Rodgers,* 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932) (pre-Act case holding that "[t]he scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it"); *Singer Sewing Machine Co. v. Benedict,* 229 U.S. 481, 488, 33 S.Ct. 942, 944, 57 L.Ed. 1288 (1913) (pre-Act case holding that federal courts will not enjoin collection of unconstitutional state taxes where the taxpayer "ha[s] a plain, adequate and complete remedy" at law); *Boise Artesian Water Co. v. Boise City,* 213 U.S. 276, 282, 29 S.Ct. 426, 428, 53 L.Ed. 796 (1909) (pre-Act case holding that "the illegality or unconstitutionality of a state or municipal tax or imposition is not of itself a ground for equitable relief in the courts of the United States."). "And even where the Tax Injunction Act would not bar federal-court interference with state tax administration, principles of federal equity may nevertheless counsel the withholding of relief." *Rosewell,* 450 U.S. at 525–26 n. 33, 101 S.Ct. at 1235 n. 33 (citing *Great Lakes,* 319 U.S. at 301, 63 S.Ct. at 1074). Any doubts on this score were laid to rest in *Fair Assessment,* where then-Justice Rehnquist discussed at length the strong "post-Act vitality of the comity principle." 454 U.S. at 110–11, 102 S.Ct. at 183–84 (in context of § 1983 action for unconstitutional taxation). It is clear that beyond the Act's defined restriction of federal jurisdiction, federal courts may abstain from entertaining cases better left to their state brethren. "The reasons supporting federal noninterference [with state taxation] are just as compelling today as they were in 1937." *Rosewell,* 450 U.S. at 527, 101 S.Ct. at 1236. *See also Winicki v. Mallard,* 783 F.2d 1567, 1569–70 (11th Cir.), *cert. denied,* 479 U.S. 815, 107 S.Ct. 70, 93 L.Ed.2d 27 (1986).

Before deferring, however, to state courts on this taxation issue, the Court must decide if the state level remedies available to Plaintiff are in fact "plain, speedy and efficient"[5] or even "plain, adequate and complete." The "basic inquiry" is whether "there is a 'plain, speedy and efficient' way for [the taxpayer] to press her constitutional claims while preserving the right to challenge the amount of tax due." *Tully v. Griffin, Inc.,* 429 U.S. 68, 74, 97 S.Ct. 219, 223, 50 L.Ed.2d 227 (1976). In *Great Lakes* the Court also emphasized the preservation of federal rights:

[I]t is the court's duty to withhold such relief when, as in the present case, it appears that the state legislature has provided that on payment of any challenged tax

---

**5.** The Court is satisfied that the Tax Injunction Act applies to actions brought pursuant to 42 U.S.C. § 1983. *See, e.g., Hawaiian Telephone Co. v. State Dep't of Labor,* 691 F.2d 905, 909–910 (9th Cir.1982) (holding "that § 1983 is not an exception to the State Tax Injunction Act"). *Cf. Fair Assessment,* 454 U.S. at 110–11, 102 S.Ct. at 183–84 (asserting vitality of comity principle as applied to § 1983 actions); *Winicki,* 783 F.2d at 1571 (dismissing § 1983 action against tax statute on comity grounds). Even if the Act did not apply to § 1983, comity would require dismissal under a substantively identical standard. *See Williams,* 745 F.2d at 1411 n. 6.

to the appropriate state officer, the taxpayer may maintain a suit to recover it back. In such a suit he may assert his federal rights and secure a review of them by this Court. This affords an adequate remedy to the taxpayer, and at the same time leaves undisturbed the state's administration of its taxes.

319 U.S. at 300–01, 63 S.Ct. at 1074. *See also Hillsborough v. Cromwell,* 326 U.S. 620, 625, 66 S.Ct. 445, 449, 90 L.Ed. 358 (1946).

In measuring the adequacy of state remedies, the "plain, speedy and efficient" exception must be narrowly construed. *Grace Brethren Church,* 457 U.S. at 413, 102 S.Ct. at 2510. The remedies need only meet "certain 'minimal procedural criteria' and a reviewing court should eschew any analysis of their substantive sufficiency so long as a complainant has some opportunity to raise her constitutional objections." *Colonial Pipeline Co. v. Collins,* 921 F.2d 1237, 1245 (11th Cir.1991); *Richards v. Jefferson County,* 789 F.Supp. 369, 371 (N.D.Ala.1992), *aff'd,* 983 F.2d 237 (1992). The Tax Injunction Act "contemplates nothing more," *Rosewell,* 450 U.S. at 516, 101 S.Ct. at 1231, and is intended to "drastically limit[ ]" federal court jurisdiction. *Colonial Pipeline,* 921 F.2d at 1241.

Here, the available state remedies are adequate to bar jurisdiction in this Court.

## A. Pre–Taxation Remedies

There appear to be at least two procedures by which a taxpayer might pursue a grievance before the tax is actually paid. First, under O.C.G.A. § 40–3–6, "a person aggrieved by an act or omission to act of the Department of Revenue" relating to a certification of automobile title is entitled to a hearing. Procedures for these hearings are governed by the Georgia Administrative Procedure Act, O.C.G.A. § 50–13–1 et seq.: § 50–13–12 provides for hearings on "matter[s] involving [a taxpayer's] tax liability," and § 50–13–19 provides for judicial review in the superior courts of Georgia after exhaustion of all administrative remedies. Although the taxpayer's constitutional claims cannot be resolved at the administrative level, if aired there they will be preserved for disposition in the superior courts. *See id.*

§ 50–13–19(h)(1); *Sparks v. Caldwell,* 244 Ga. 530, 530, 261 S.E.2d 590 (1979); *Georgia Real Estate Comm'n v. Burnette,* 243 Ga. 516, 516–17, 255 S.E.2d 38 (1979); *Flint River Mills v. Henry,* 234 Ga. 385, 386–87, 216 S.E.2d 895 (1975).

The Northern District of Georgia, in *Age Int'l, Inc. v. Miller,* 830 F.Supp. 1484, 1499 (N.D.Ga.1993), *aff'd,* 37 F.3d 637 (11th Cir. 1994), found superior court review of agency decisions on constitutional grounds too "uncertain" to pass muster under the Tax Injunction Act. This Court does not see the justification for that wariness; the Administrative Procedure Act itself clearly contemplates constitutional review and Georgia Supreme Court cases assume superior court competence to hear constitutional questions. The two Georgia Court of Appeals cases cited by the court in *Age Int'l, Flowers v. Georgia Real Estate Comm'n,* 141 Ga.App. 105, 232 S.E.2d 586 (1977), and *Dep't of Public Safety v. Foreman,* 130 Ga.App. 71, 202 S.E.2d 196 (1973), neither of which are tax cases, stand at most for the proposition that constitutional claims will not be heard by the superior court if not first raised at the administrative level. This Court does not find that caveat hazardous enough to render state remedies inadequate for purposes of barring jurisdiction under the Tax Injunction Act.

If the Department of Revenue finding is reviewed by a superior court, the final judgment of that court may then be appealed to the Georgia Court of Appeals and the Georgia Supreme Court. O.C.G.A. § 50–13–20. Finally, any judgment at the state supreme court level is then appealable to the United States Supreme Court.

A disgruntled taxpayer is also expressly allowed to skip the administrative process and proceed directly to the superior courts for relief. Section 50–13–12(d) states that

this Code section is not intended to require that the aggrieved taxpayer must demand a hearing hereunder before pursuing judicial remedies which may be available to him, but an aggrieved taxpayer who does demand a hearing under this Code section shall be deemed to have elected the reme-

dies provided in this Code section and in Code Section 50–13–19 as his exclusive remedies.

Direct appeal to the state courts is governed by § 48–2–59, which provides that "[e]xcept with respect to claims for refunds, either party may appeal from any order, ruling, or finding of the commissioner to the superior court of the county of the residence of the taxpayer[.]" The taxpayer must file with the state court clerk "a surety bond or other security" covering the amount of the disputed tax should the taxpayer be forced to pay it. § 48–2–59(c). The superior court may then hear the taxpayer's constitutional claims and grant declaratory or injunctive relief. *See* O.C.G.A. §§ 9–4–1, 9–5–1.

This process alone satisfies the "plain, speedy and efficient" requirements of the Tax Injunction Act with regard to pre-taxation relief. *See Age Int'l*, 830 F.Supp. at 1501 ("For the sole reason that declaratory and injunctive relief is available in the courts of Georgia, this court must conclude that the Tax Injunction Act is a bar to federal jurisdiction."); *Kiker v. Hefner*, 409 F.2d 1067, 1069 (5th Cir.1969) ("This Court has long recognized that a remedy by injunction in a state court is a plain, speedy and efficient remedy."); *Undercofler v. Eastern Air Lines*, 221 Ga. 824, 147 S.E.2d 436 (1966); *Colvard v. Ridley*, 218 Ga. 490, 128 S.E.2d 732 (1962). There is also no indication that the Georgia courts would feel compelled to defer to potential administrative remedies before granting equitable relief. "[T]he Georgia courts will entertain an action for declaratory or injunctive relief where the sole issue is the constitutionality of a tax statute and the case will not disrupt an ongoing administrative proceeding." *Age Int'l*, 830 F.Supp. at 1500 (listing Georgia Supreme Court cases).

Plaintiff attempts to reveal several deficiencies making state court equitable relief insufficient to bar federal jurisdiction. She first argues that because the transfer fee is assessed and due at the moment the taxpayer applies for certification, a taxpayer has no opportunity to file for pre-taxation remedies. What Plaintiff fails to mention is that Georgia law gives residents 90 days in which to

apply for title certification "from the date the owner is otherwise required by law to register the vehicle in this state." O.C.G.A. § 40–3–21. And as Plaintiff observes, Georgia law allows vehicle registration within thirty days of residency. O.C.G.A. § 40–2–8. Potential plaintiffs have more than enough time to initiate administrative or judicial procedures.

Plaintiff next argues that forcing her to exhaust state administrative proceedings that admittedly cannot dispose of her constitutional claims before allowing her a judicial forum is so "inefficient" that the jurisdictional bar of the Tax Injunction Act must be lifted. First, as reviewed above, the Plaintiff is not required to pursue administrative remedies under Georgia statutory law before filing in superior court. Second, even if she were so required, that remedy would still be sufficient under the Tax Injunction Act. *Tully*, 429 U.S. at 75, 97 S.Ct. at 223–24 (state level remedy sufficient even if judicial review of administrative decision is only remedy available); *Northwest Airlines v. State Bd.*, 11 F.3d 70, 72 (6th Cir.1993) (same); *Behe v. County Bd.*, 952 F.2d 66, 70 (3d Cir.1991) (same); *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1055 (9th Cir.1991), *cert. denied*, 503 U.S. 938, 112 S.Ct. 1478, 117 L.Ed.2d 621 (1992) (same, under Johnson Act). *See also Geo. F. Alger Co. v. Peck*, 74 S.Ct. 605, 606–07, 98 L.Ed. 1148 (1954) (remedy sufficient even though constitutional claims could not be heard at administrative level); *Capitol Ind.–EMI v. Bennett*, 681 F.2d 1107, 1114 (9th Cir.1982), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655 (1982) (same).

Plaintiff also claims that a declaratory judgment action at the state level is "inefficient" because the court filing fee exceeds the transfer fee originally assessed against her. The Court is not about to dismiss judicially and congressionally recognized federalism concerns because of a filing fee disparity. *Cf. Colonial Pipeline*, 921 F.2d at 1242–43 (criticizing "overly literal and technical attempts" to remove a claim from the scope of the Tax Injunction Act, and holding that courts "must look not only at whether the literal terms of the statute are implicated, but also at whether the requested relief ...

collide[s] with the broad purposes of the Act."). In addition, the economic burden would surely not be lessened by a federal court action. *Cf. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498 (noting that any harm that taxpayer would suffer pending resolution of constitutional claims in state proceedings would not be reduced by seeking federal relief). The bond requirement under § 48–2–59 does not even render a state remedy "inefficient," *Int'l Lotto Fund v. Va. State Lottery,* 20 F.3d 589, 593 (4th Cir.1994), nor does being required to pay the disputed tax before pursuing judicial relief. *See Rosewell,* 450 U.S. at 528, 101 S.Ct. at 1236–37; *Great Lakes,* 319 U.S. at 301, 63 S.Ct. at 1074.

As for potential injunctive relief, Plaintiff claims that she cannot avail herself thereof because she does not fall within the requirements of the Georgia injunctive relief statute, O.C.G.A. § 9–5–1. She argues that her failure to pay the transfer fee for her second vehicle constitutes a misdemeanor under O.C.G.A. § 40–2–8, and claims that since she is now in violation of state law, state courts have somehow lost the power to enjoin the transfer fee provision of § 40–3–21.1. Plaintiff further argues that the Georgia statute is inapplicable because "the language of [the statute] clearly demonstrates that the state was not contemplated as a possible party to an injunction of this sort. The state is not a 'private individual or corporation' within the meaning of the statute." Pltf.Resp. to Mtn. to Dismiss, at 15–16.

Neither of Plaintiff's arguments withstand judicial examination. In support of her first point she cites O.C.G.A. § 9–5–2, which provides, in full, that "[e]quity will take no part in the administration of the criminal law. It will neither aid criminal courts in the exercise of their jurisdiction, nor will it restrain or obstruct them." She also relies on *Staub v. Mayor of Baxley,* 211 Ga. 1, 83 S.E.2d 606 (1954), which cites the precursor to § 9–5–2 and holds in part that prosecutions under municipal ordinances cannot be judicially enjoined. The court said that "[w]here ... the ordinance attempted to be enforced appears quasi-criminal in nature, it must be presumed from the record that the plaintiffs are seeking to prevent the defendants from continuing prosecutions, and the court below had no authority to enjoin such enforcement." *Id.* at 2, 83 S.E.2d 606. That point is well settled. *See, e.g., City of Tifton v. Cooper,* 206 Ga. 379, 57 S.E.2d 196 (1950); *Thomas v. Mayor of Savannah,* 209 Ga. 866, 76 S.E.2d 796 (1953).

Neither the statutory nor common law, however, bars injunctive relief in the present case. Section 9–5–2 of the Georgia Code does not prevent courts from enjoining enforcement of taxation statutes tangentially related to a potential misdemeanor charge. That would be quite an expansion of a Code section intended to bar court injunctions of criminal prosecutions. *See, e.g., Ray v. City of Dalton,* 191 Ga. 46, 11 S.E.2d 193 (1940). Further, judicial application of that provision to quasi-criminal municipal ordinances is a far cry from application to state taxation laws affecting property rights.

With regard to Plaintiff's claim that she cannot secure an injunction where the state is a party, the case law clearly belies that notion. *See, e.g., Age Int'l,* 830 F.Supp. at 1500 (listing cases approving of injunctive relief in state tax cases). *See also Register et al., v. Langdale,* 226 Ga. 82, 87, 172 S.E.2d 620 (1970) (listing cases supporting availability of injunctive relief against tax assessors). Finally, even if Plaintiff were legally barred from injunctive relief, declaratory relief would secure the same result under a different name. This similarity is what motivated the United States Supreme Court to apply the Tax Injunction Act to declaratory judgment motions. *See Grace Brethren Church,* 457 U.S. at 408, 102 S.Ct. at 2508 ("there is little practical difference between injunctive and declaratory relief" in the context of state tax laws).

Plaintiff is in fact currently pursuing an action in state court identical to that before us today, *see* Civil Action No. X93–3378–H (Sup.Ct., Chatham County), and raises further arguments specific to that suit. She complains that the State has raised defenses of sovereign immunity in the parallel suit, thus making state relief too "uncertain" for this Court to bar federal jurisdiction. Federal courts will exercise jurisdiction over state

tax cases where the state relief is too "uncertain" to be "plain," as in "plain, speedy and efficient." *See, e.g., Grace Brethren Church,* 457 U.S. at 415, 102 S.Ct. at 2511 ("This Court has not hesitated to declare a state refund provision inadequate to bar federal relief if the taxpayer's opportunity to raise his constitutional claims in the state proceedings is uncertain."). The risk that defendants may raise legally available defenses, however, is not enough to make a state lawsuit "uncertain" for purposes of the Tax Injunction Act. A plaintiff must be given an opportunity to argue her federal rights in a competent court, not handed a victory in that court. Further, her odds in a federal forum are not substantively better than at the state level; as is clear from this order, states raise immunity defenses in federal courts, too. *See also Rosewell,* 450 U.S. at 512–14, 101 S.Ct. at 1228–30 (district court jurisdiction may not be based on substantive inadequacy of state court remedy).

Plaintiff also claims that because the superior court has denied her motion for class certification, there is consequently no plain, speedy and efficient remedy available there. Denial of class certification has no effect on the relief available to the Plaintiff herself, and it is insufficient to override the Tax Injunction Act. *See Waldron v. Collins,* 788 F.2d 736, 738 (11th Cir.1986), *reh'g denied,* 795 F.2d 89 (1986), *cert. denied,* 479 U.S. 884, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *Bland v. McHann,* 463 F.2d 21, 28 & n. 24 (5th Cir.1972), *cert. denied,* 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973).

Far from miscellaneous procedural hurdles, even the absolute futility of state level litigation would not lift the jurisdictional bar on federal relief. *See, e.g., Huber Pontiac, Inc. v. Whitler,* 585 F.2d 817, 821 (7th Cir. 1978) (futility of state court proceedings does not render that remedy inadequate, even if plaintiff is faced with recent, dispositive state court opinion contrary to her position); *Coon v. Teasdale,* 567 F.2d 820, 822 (8th Cir.1977) ("[M]ere allegations of unlikelihood of success in state court does not render the state remedy inadequate[.]"). *See also Franchise Tax Bd. v. Alcan Aluminium,* 493 U.S. 331, 340–41, 110 S.Ct. 661, 667, 107 L.Ed.2d 696

(1990) (improbability of prevailing at state level is not a basis for circumventing Tax Injunction Act); *Redd v. Lambert,* 674 F.2d 1032, 1036 (5th Cir.1982) ("There is no indication that Congress intended that the lower federal courts would provide supplemental relief whenever a litigant does not receive all the relief he seeks in state court."). It should be obvious by now that in tax cases the federalism concerns supporting federal deference to state remedies are exceedingly strong. Nothing about Plaintiff's potential pre-taxation remedies at the state level prompts this Court to dismiss those concerns.

## B. Post–Taxation Remedies

Georgia statutory law provides post-taxation remedies as well. The Georgia Code provides that if a taxpayer has already paid a tax, he or she will be refunded, with interest, any such tax later determined to have been erroneously or illegally assessed, whether paid voluntarily or involuntarily. The taxpayer must first file a claim with the state revenue commissioner, and may demand a hearing on the matter. If the commissioner denies the claim or fails to rule upon it within one year, the taxpayer may resort to the state courts for relief—the State of Georgia has consented to be sued in this context. *See* O.C.G.A. § 48–2–35. *See also Thompson v. Continental Gin,* 73 Ga.App. 694, 37 S.E.2d 819 (1946).

The problem here is that a recent Georgia Supreme Court decision bars most refunds under § 48–2–35 when the tax is challenged on constitutional grounds:

> We take this opportunity to hold that in cases in which a taxing statute is declared unconstitutional or otherwise void, a taxpayer must have made a demand for refund at the time the tax is paid or at the time his tax return is filed, whichever occurs last. Failure to do so bars any future claim.

*Reich v. Collins,* 262 Ga. 625, 628, 422 S.E.2d 846 (1992). The court interpreted § 48–2–35 as "contemplat[ing] the situation where a taxing authority erroneously or illegally assesses and collects a tax under a valid law. It does not address the situation where the

law under which the taxes are assessed and collected is itself subsequently declared to be unconstitutional[.]" *Id.* The court reasoned that this result was necessary "in that the State must be able to rely on the laws under which it assesses taxes in order to promote stable and efficient government." *Id.*

The *Reich* decision was vacated by the United States Supreme Court, — U.S. —, 113 S.Ct. 3028, 125 L.Ed.2d 717 (1993), and on remand the Georgia Supreme Court did not reach this particular issue. 263 Ga. 602, 437 S.E.2d 320 (1993). This Court finds, however, that the uncertain status of the *Reich* holding makes a constitutional claim under the Georgia refund statute equally uncertain, and so does not satisfy the criteria of the Tax Injunction Act.

The refund statute, however, is not the only means by which a taxpayer might challenge the constitutional validity of a state tax and win retrospective relief. He or she can bring an action in state court under 42 U.S.C. § 1983. Indeed, this appears to be exactly what the Plaintiff has already done: Although her state court complaint does not reveal a legal basis for awarding damages (here, a refund) for her constitutional claims, the demand is presumably premised on § 1983, which provides a civil damages remedy for constitutional violations by state officers acting under color of state law. It is settled that § 1983 actions may be brought in state courts under most circumstances, *see, e.g., Testa v. Katt,* 330 U.S. 386, 391, 67 S.Ct. 810, 813, 91 L.Ed. 967 (1946), and plaintiffs may now bring § 1983 actions to enforce the "negative" commerce clause. *See Dennis v. Higgins,* 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991).

The Plaintiff thus seems to have a "plain, speedy and efficient" post-taxation remedy, as well. She argues, however, that (1) "This alleged [§ 1983] remedy is clearly inadequate under the 'plain, speedy and efficient' relief analysis because it is equally as inefficient as the declaratory judgment remedy"; (2) "it is uncertain [because *Harper v. Va. Dep't of Taxation,* — U.S. —, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), and *McKesson v. Div. of Alcoholic Bev.,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), require a 'clear and certain' pre-deprivation remedy for due process purposes]"; and (3) "it forces the plaintiff to first elect and exhaust the admittedly futile administrative remedy discussed above." Pltf. Brief in Opp. to Def. Mtn. for Sum. Judg., at 21–22. The Court has already disposed of the first argument in its discussion of declaratory relief, *supra.* As for the second, the requirements for a "plain, speedy and efficient" remedy under the Tax Injunction Act are not equivalent to the elements of an adequate remedy under the Due Process Clause. It is probably true that some elements of due process are implicitly required for a "plain, speedy and efficient" remedy, but there is no logically or legally necessary equivalence between the two. *See Age Int'l,* 830 F.Supp. at 1495–96 (further addressing—and rejecting—this argument). A meaningful and efficient opportunity to raise federal claims in state court is all the Tax Injunction Act requires.

Plaintiff cites *Backus v. Chilivis,* 236 Ga. 500, 224 S.E.2d 370 (1976), for her third proposition that she must exhaust state administrative remedies before filing a § 1983 claim in state court, and asserts that this requirement makes a § 1983 action "inefficient." Defendants agree that *Backus* allows § 1983 actions "only if the state remedies available are inadequate for some reason." Def. Brief in Supp. of Mtn. to Dismiss, at 12. The Court is dubious of Plaintiff's reading of *Backus* as requiring exhaustion, especially in light of *Patsy v. Bd. of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) and progeny, but the question is not addressed here. As explained in part III.A, *supra,* even if there is an exhaustion requirement, it does not make state remedies inefficient for purposes of the Tax Injunction Act.

Finally, although neither party cites it for this proposition, the United States Supreme Court has in the past found Georgia taxation remedies to not be "plain, speedy and efficient." In *Georgia Railroad & Banking Co. v. Redwine,* 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952), the plaintiff railroad asked a federal court to enjoin collection of ad valorem taxes assessed by the State and every county, school district, and municipality through which the railroad's lines trav-

elled. The State of Georgia argued that "plain, speedy and efficient" state remedies were available for plaintiff's tax claims. Two of those mentioned were a "suit for injunction in the Superior Court of Fulton County" and "suing the State for refund after payment of taxes," *id.* at 303, 72 S.Ct. at 323–24, both remedies contemplated in the instant case. In *Redwine*, however, a suit for injunction was precluded by the result of a prior litigation by the same plaintiff, and a post-taxation lawsuit was found inadequate because it could only partially compensate the plaintiff for the taxes paid. The plaintiff contested local (school district and municipal) as well as state taxes, and a suit for refund was applicable only for those payable directly to the State. Here, however, the Supreme Court's concerns in *Redwine* are not applicable—there is no prior litigation and only State taxes are in dispute. *See also Rosewell*, 450 U.S. at 517, 537, 101 S.Ct. at 1231, 1241 (distinguishing *Redwine* ).[6]

### C. Coda

More stringent and slower state level procedures than those at issue in this case have in the past been considered "plain, speedy and efficient." *See Grace Brethren Church*, 457 U.S. at 413–14, 102 S.Ct. at 2510–11; *Rosewell*, 450 U.S. at 508–11, 101 S.Ct. at 1226–28. A number of past decisions have found Georgia's potential tax remedies sufficient to protect taxpayers' federal rights. *See, e.g., Ayers v. Polk County*, 697 F.2d 1375 (11th Cir.1983); *Noble v. Bd. of Tax Assessors*, 672 F.2d 872, 875 (11th Cir.1982) (finding arbitration system an inadequate le-

gal remedy and allowing equitable relief); *Moss v. Georgia*, 655 F.2d 668 (5th Cir. 1981);[7] *Kiker*, 409 F.2d 1067; *Adams v. Smith*, 415 F.Supp. 787 (N.D.Ga.1976), *aff'd*, 568 F.2d 1232 (5th Cir.1978). The United States Supreme Court "has long recognized the dangers inherent in disrupting the administration of state tax systems," *Grace Brethren Church*, 457 U.S. at 410, 102 S.Ct. at 2509, and lower federal courts have consistently followed suit. Federal judicial reluctance to meddle in state affairs is at its strongest in the area of fiscal operations. In this case, the record of the state level litigation shows that not all is going Plaintiff's way, but the Tax Injunction Act does not grant a right that it should be. *Cf. Mandel v. Hutchinson*, 494 F.2d 364, 367 (9th Cir. 1974) ("For a state remedy to be 'adequate' under [§ 1341] it need not necessarily be 'the best available or even equal to or better than the remedy which might be available in the federal courts.'" (quoting *Bland*, 463 F.2d at 29)). Administration of tax laws is properly left to the judicial arm of the government that created them.

### IV. Claims Against Defendant Collins in His Individual Capacity

Plaintiff also makes claims against Defendant Collins in his individual capacity, thus removing him from the sovereign immunity of the state. Plaintiff seeks damages as well as prospective relief, and claim that any retrospective award against Collins will come from his independent insurance policy and not state coffers. The Court does not address the merits of Plaintiff's claims against Defendant Collins. Prospective relief is barred here just as it was barred for claims

---

6. The Court also notes *Barringer v. Griffes*, 964 F.2d 1278 (2d Cir.1992), a relatively recent decision in which the Second Circuit found state administrative remedies insufficiently "plain" to satisfy the Tax Injunction Act. A Vermont statute required persons moving to the state to pay a tax of four percent of the value of their automobile upon registration within the state. *Id.* at 1279–80. Plaintiffs refused to pay the tax and filed an action in federal court challenging the constitutionality of the statute under the Commerce and Equal Protection Clauses. The district court dismissed the complaint, but the circuit court reversed, finding that the Vermont Administrative Procedures Act did not guarantee judicial review of decisions of the Tax Commissioner on constitutional grounds, *id.* at 1283, and the scope of that review was doubtful. *Id.* at

1283–84. The circuit court then ruled the Tax Injunction Act inapplicable due to the "uncertainty" of state remedies, and remanded the case.

Although arising from similar facts, the state statutory remedies in the instant case are far more "certain" than those at issue in *Barringer*. There is no doubt that a Georgia taxpayer will receive an administrative hearing on his or her grievances, O.C.G.A. § 40–3–6(a), and judicial review is assured. O.C.G.A. §§ 48–2–59, 50–13–19.

7. The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

against Collins in his official capacity. As for damages, it is inappropriate for this Court to hear those claims, as well; a finding on the constitutionality of Georgia's transfer fee provision is a prerequisite to any damage award against the State Revenue Commissioner, no matter who ultimately pays the bill. In *Fair Assessment,* the United States Supreme Court reasoned that damages actions under § 1983 require a "declaration" that the state law is unconstitutional before the plaintiff can recover; under a thin veneer such actions would allow that which comity principles have barred for years. *See* 454 U.S. at 113–15, 102 S.Ct. at 184–86. The High Court then explicitly barred federal claims against state tax laws under § 1983.

Further, although on its face the Tax Injunction Act applies only to federal prospective relief, some courts have extended its reach to refund actions by reasoning from comity principles like those discussed in *Fair Assessment. See, e.g., Bland,* 463 F.2d at 25–27. The end result is that Plaintiff's retrospective and prospective claims are barred whether brought against Collins in his official or his individual capacity.

### V. Conclusion

The Court does not consider abstention, since an abstention analysis assumes that the Court could properly exercise jurisdiction in the first place. Nor does the Court rule on Plaintiff's motions for class certification and summary judgment, or Defendants' arguments on mootness and lack of standing. Those issues are left to the superior court.

Sovereign immunity prevents the Court from hearing any claims against the State and retrospective claims against Collins in his official capacity. The Tax Injunction Act prevents it from hearing prospective claims against Collins in his official and individual capacities, and finally, comity principles prevent the Court from hearing retrospective claims against Collins in his individual capacity. Because none of Plaintiff's claims are properly lodged in this Court, all of them are hereby **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**